**F I L E D**

PUBLISH

**December 5, 2005**

## UNITED STATES COURT OF APPEALS

### TENTH CIRCUIT

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

MELVIN CLYDE COLLINS II,

Defendant-Appellant.

No. 04-2002

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO
(D.C. NO. CR-02-663)**

Jill M. Wichlens, Assistant Federal Public Defender (Raymond P. Moore, Federal Public Defender, with her on the brief), Denver, Colorado, for Defendant-Appellant.

Laura Fashing, Assistant United States Attorney (David C. Iglesias, United States Attorney, with her on the briefs), Albuquerque, New Mexico, for Plaintiff-Appellee.

Before **TACHA**, Chief Circuit Judge, **EBEL**, and **McCONNELL**, Circuit Judges.

**McCONNELL**, Circuit Judge.

Melvin Clyde Collins II appeals his conviction on the ground that he was deprived of counsel at his competency hearing. At his competency hearing, the

district court was presented with two issues: a motion to withdraw filed by Mr. Collins's lawyer and the issue of Mr. Collins's competency. The district court addressed the competency issue before the withdrawal motion. As a result, Mr. Collins's lawyer, believing that there had been a breakdown in the attorney-client relationship, did not comment on Mr. Collins's competency and did not introduce available evidence that may have affected the competency determination. Mr. Collins claims that this conduct constituted a constructive denial of counsel. Mr. Collins also appeals his sentence under *United States v. Booker*, 125 S. Ct. 738 (2005). Because Mr. Collins was not represented by counsel at his competency hearing, we **VACATE** the conviction and **REMAND** for a new trial consistent with Mr. Collins's constitutional rights.

## I.

On April 23, 2002, Mr. Collins was charged with two counts of sexually abusing a minor under age sixteen and one count of sexually abusing a minor under age twelve, in violation of 18 U.S.C. §§ 2241(c), 2246(2)(A), 2246(2)(B), and 1152. The court appointed Mr. William L'Esperance to represent Mr. Collins. After his indictment, Mr. Collins filed, and the court granted, a motion requesting a psychological examination to determine whether he was competent to stand trial. Mr. Collins was evaluated by Bureau of Prisons psychologist, Dr. Jim Womack. After interviewing Mr. Collins, administering three personality tests,

and interviewing Mr. Collins's wife, Dr. Womack diagnosed Mr. Collins with paranoid personality disorder. Dr. Womack did not diagnose Mr. Collins with schizophrenia or delusional disorder, despite Mr. Collins's statement that he was diagnosed with these disorders in childhood. Dr. Womack found Mr. Collins competent to stand trial. In his report, Dr. Womack wrote:

> The defendant currently does not suffer from a mental disease or defect which would render him unable to understand the nature and consequences of the proceedings against him or to assist properly in his own defense. He evidenced a good command of court room personnel and procedures. He most likely will be a difficult client with whom to work; however, potential conflicts can be attributable to the client's personality disorder and not a psychotic process or cognitive deficiencies.

After the evaluation was completed, the court scheduled a competency hearing for December 2, 2002.

Before the competency hearing, Mr. Collins submitted a letter to the court requesting that his current counsel, Mr. William L'Esperance, be replaced. In this letter, Mr. Collins claimed that Mr. L'Esperance was lying to him, insulting both him and his wife, and colluding with the prosecution and the FBI. Mr. Collins also sent a letter to the New Mexico State Bar Association Disciplinary Board attempting to discredit Mr. L'Esperance. In response to this letter, Mr. L'Esperance filed a motion to withdraw, claiming that he questioned his ability to adequately communicate with Mr. Collins and noting that the lack of communication between himself and Mr. Collins hampered the investigation. Mr.

L'Esperance filed his motion to withdraw on December 2, 2002—the date of Mr. Collins's competency hearing.

At the hearing, the court considered the issue of Mr. Collins's competency before addressing Mr. L'Esperance's pending motion to withdraw. The district court began the competency hearing by inquiring whether there was any issue as to competency in light of the competency evaluation submitted by Dr. Womack that found Mr. Collins competent to stand trial. Mr. L'Esperance responded by stating:

> Your Honor, I will not comment on that. I have had new materials disclosed, including the defendant's DD-214 of the military records, site reports, and other matters that were not available to the reviewing staff. And under the circumstances that we are about this morning and the [withdrawal] motion I have filed, I will not comment on that.

R. Vol. IV, p. 3.) The court then questioned the government on its perspective regarding competency. Government counsel informed the court that if the court were to grant Mr. L'Esperance's motion to withdraw, the issue of competency should be the "first item of business to be taken up by any new counsel" that would be appointed. The government also stated that, while it thought the competency evaluation "speaks for itself," the government found military records that "may be relevant to the new counsel to reconsider the competency issue." The court then asked the government to submit an order finding Mr. Collins

competent to stand trial, but noted that "if the new attorney wants to revisit this issue, then [the court will] certainly . . . do that."

On December 5, 2002, the district court entered a written order finding Mr. Collins competent to stand trial. The order did not allude to the possibility that additional information, such as military records, was available but not considered, and did not mention the district court's willingness to revisit the competency issue with new counsel, which the court had expressed at the hearing. Mr. L'Esperance approved the order as "to form only" on behalf of Mr. Collins. On December 6, 2002, the district court entered an order permitting Mr. L'Esperance to withdraw as counsel. Mr. Troy Prichard was appointed as substitute counsel for Mr. Collins.

Seven months later, the grand jury returned a superseding indictment, amending the second count to allege that the victim was a Laguna Indian. At the pretrial conference, on September 9, 2003, Mr. Prichard renewed the issue of Mr. Collins's competency. Mr. Prichard informed the court that previous counsel had raised the issue of competency almost a year earlier, that Mr. Collins had been evaluated, and that the court had concluded he was competent. Mr. Prichard then stated that he was "concerned as to [Mr. Collins's] competence today, and specifically, his ability to meaningfully assist [Mr. Prichard] during his trial." Mr. Prichard further noted that he did "not sense a great deal of logic in terms of

[his] client's comprehension of the issues and the consequences of this case." Mr. Prichard suggested that the court "have this [sic] same person that did the evaluation do just a quick review prior to trial." The district court denied Mr. Prichard's request for a renewed competency hearing. The court explained that Mr. Collins already had a competency hearing, that he was deemed competent to stand trial, and that the trial was scheduled for next week and would not be postponed.

The jury convicted Mr. Collins on three counts of sexual abuse. Before the sentencing hearing, Mr. Collins filed a motion for downward departure based on his extraordinary mental and emotional conditions. The court denied the motion. The court adopted the factual findings contained in the presentence report, including a finding that the victim was in Mr. Collins's custody, care and supervisory control. The court sentenced Mr. Collins to 292 months in prison. Mr. Collins now appeals his conviction and sentence.

## II.

Mr. Collins claims that Mr. L'Esperance's lack of representation at the competency hearing and the district court's refusal to grant Mr. Prichard's request to revisit the issue of competency before trial amounted to a deprivation of Mr. Collins's Sixth Amendment right to counsel. He contends that he was constructively denied counsel under *United States v. Cronic*, 466 U.S. 648 (1984).

The government, in contrast, suggests that this issue is properly analyzed as a question of competence of counsel, under *Strickland v. Washington*, 466 U.S. 668 (1984). If so, the issue should be raised on collateral review rather than direct appeal, to permit the development of an evidentiary record that will allow a court to determine whether Mr. L'Esperance's conduct prejudiced Mr. Collins.

### A. Sixth Amendment Violation

The Sixth Amendment entitles a defendant to the assistance of counsel at every critical stage of a criminal prosecution. *Kirby v. Illinois*, 406 U.S. 682, 690 (1972); *United States v. Gordon*, 4 F.3d 1567, 1571 (10th Cir. 1993). Critical stages are those steps of a criminal proceedings that hold significant consequences for the accused. *Bell v. Cone*, 535 U.S. 685, 695-96 (2002). Thus, a defendant is entitled to counsel at any proceeding where an attorney's assistance may avoid the substantial prejudice that could otherwise result from the proceeding. *Coleman v. Alabama*, 399 U.S. 1, 9 (1970). We have not previously had opportunity to consider whether a competency hearing is a critical stage. Other circuits, however, have held that competency hearings are critical stages, and we agree. *See Appel v. Horn*, 250 F.3d 203, 215 (3d Cir. 2001); *United States v. Klat*, 156 F.3d 1258, 1262 (D.C. Cir. 1998); *United States v. Barfield*, 969 F.2d 1554, 1556 (4th Cir. 1992); *Sturgis v. Goldsmith*, 796 F.2d 1103, 1109 (9th Cir.

1986).  Indeed, the government does not contest that the competency hearing is a critical stage, at which the defendant is constitutionally entitled to representation by counsel.  *Cf.* 18 U.S.C. § 4247(d) (creating a statutory right to counsel at competency hearings).

The contested issue is whether Mr. Collins was constructively denied counsel at his competency hearing or whether his claim is properly cognizable as a claim for ineffective assistance of counsel.   If Mr. Collins was constructively denied counsel at his competency hearing, then he need not show prejudice to establish a Sixth Amendment violation.  *Cronic*, 466 U.S. at 659; *Turrentine v. Mullin*, 390 F.3d 1181, 1207-08 (10th Cir. 2004).

"The Constitution's guarantee of assistance of counsel cannot be satisfied by mere formal appointment."  *Cronic*, 466 U.S. at 654-55.  The importance of the Sixth Amendment right to counsel derives from the adversarial nature of our justice system, which is premised on the "well-tested principle that truth--as well as fairness--is best discovered by powerful statements on both sides of the question." *Penson v. Ohio*, 488 U.S. 75, 84 (1988) (internal quotation marks omitted).  Because it is unlikely that a criminal defendant will adequately be able to test the government's case without representation, *id.*, the adversarial process requires that a defendant "have 'counsel acting in the role of an advocate.'" *Cronic*, 466 U.S. at 656 (quoting *Anders v. California*, 386 U.S. 738, 743 (1967)).

The right to counsel, therefore, is the "right of the accused to require the prosecution's case to survive the crucible of meaningful adversarial testing." *Id.* Accordingly, "if counsel entirely fails to subject the prosecution's case to meaningful adversarial testing, then there has been a denial of Sixth Amendment rights that makes the adversary process itself presumptively unreliable." *Id.* at 659. This Circuit has been reluctant to find constructive denials of counsel, and has found a "complete absence of meaningful adversarial testing only where the evidence 'overwhelmingly established that [the] attorney abandoned the required duty of loyalty to his client,' and where counsel 'acted with reckless disregard for his client's best interests and, at times, apparently with the intention to weaken his client's case.'" *Turrentine*, 390 F.3d at 1208 (quoting *Osborn v. Shillinger*, 861 F.2d 612, 624 (10th Cir. 1988)). In this case, where counsel sought to withdraw and attempted to fulfill his ethical obligation in the meantime by preserving but not arguing his client's position, the language of "reckless disregard for his client's interest" is inapt. We have no criticism of Mr. L'Esperance for his professional performance in this case. Even without a breach of loyalty, however, where there has been a "complete absence of adversarial testing," a Sixth Amendment violation is established under *Cronic* without the showing of prejudice that is otherwise required under *Strickland*. *See Cronic*, 466 U.S. at 654; *Strickland*, 466 U.S. at 692.

At his competency hearing, Mr. L'Esperance sought to withdraw from representation and apparently took the position that the lawyer-client relationship had already effectively broken down. Because the district court chose to address the withdrawal motion *after* the competency hearing, however, Mr. L'Esperance was still serving as Mr. Collins's counsel, at least formally. As the Supreme Court explained in *Cronic*, however, formal representation alone is not enough to satisfy the Sixth Amendment. *Cronic*, 466 U.S. at 654-55. The question is whether the government's case for competency was subject to meaningful adversarial testing. If Mr. L'Esperance failed to test the prosecution's case, then Mr. Collins was constructively denied counsel under *Cronic*. Review of the record provides no doubt that Mr. Collins was constructively denied counsel at his competency hearing.

Before the competency hearing, Mr. L'Esperance filed a motion to withdraw explaining that he could not adequately communicate with Mr. Collins and that this lack of communication impaired his ability to investigate the case. Although this may establish a breakdown in the attorney-client relationship, the relatively common factual underpinning of Mr. L'Esperance's motion to withdraw does not alone establish a deprivation of counsel. Rather, it is Mr. L'Esperance's statements at the hearing, coupled with the district court's decision to enter an

order finding Mr. Collins competent, that constituted a constructive denial of counsel.

At the competency hearing, Mr. L'Esperance stated that he would "not comment" when the district court inquired whether there were any outstanding issues relating to Mr. Collins's competency in light of the competency evaluation submitted by Dr. Womack. Mr. L'Esperance informed the district court that there was additional information, such as military records and site reports, that were previously unavailable to Dr. Womack, but stated that he would "not comment" on them because of his pending motion to withdraw. Mr. L'Esperance did not introduce the newly discovered military records and site reports into evidence. Even the prosecution conceded that the new information "may be relevant to the new counsel" and that the issue of competency should be the "first item of business to be taken up by any new counsel." Notwithstanding the prosecution's recommendation, the district court entered an order finding Mr. Collins competent, without having opportunity to review the new records cited by both Mr. L'Esperance and the prosecution as relevant.

At no point during the competency hearing did Mr. L'Esperance subject the prosecution's competency case to "meaningful adversarial testing." Instead, Mr. L'Esperance did just the opposite—he remained silent because of his pending motion to withdraw. After recognizing and informing the court of a breakdown in

the attorney client relationship, Mr. L'Esperance did not attempt to represent Mr. Collins, but rather abstained from providing the court with information relevant to the issue of competency.

Several courts have held that a defendant is denied his Sixth Amendment right to counsel where his attorney fails to test the prosecution's case because counsel slept through portions of the trial. *See, e.g.*, *Burdine v. Johnson*, 262 F.3d 336, 349 (5th Cir. 2001) (en banc); *Tippins v. Walker*, 77 F.3d 682, 687 (2d Cir. 1996); *Javor v. United States*, 724 F.2d 831, 833 (9th Cir. 1984). In those cases, prejudice is presumed because sleeping counsel could not confer with the client, object to testimony, or perform adequate cross-examinations. *Tippins*, 77 F.3d at 686. Although Mr. L'Esperance was conscious and awake during Mr. Collins's competency hearing, his conduct is akin to the conduct of counsel who sleeps through portions of trial. Mr. L'Esperance declined to present mitigating evidence, which he acknowledged was relevant to his client's competency, because of his pending motion to withdraw. Unable to communicate with his client and awaiting a decision on his motion to withdraw, Mr. L'Esperance was not in a position to serve as Mr. Collins's counsel. As a result, Mr. L'Esperance did not engage his legal skills in advocating Mr. Collins's position at his competency hearing.

Mr. L'Esperance's failure to serve as Mr. Collins's advocate is manifested in his repeated declarations that he would "not comment" on his client's competency and in his refusal to present military records and other information that, by both his own and the prosecution's admissions, were relevant to Mr. Collins's competency. Because Mr. L'Esperance stood silent, citing his motion to withdraw, and did not subject the prosecution's case to adversarial testing, we hold that Mr. Collins was constructively denied counsel when the district court entered an order finding Mr. Collins competent without allowing new counsel to revisit the competency issue. Accordingly, Mr. Collins has established a Sixth Amendment violation under *Cronic*, and he need not demonstrate prejudice from Mr. L'Esperance's conduct.

### B. Remedy

Because we find that Mr. Collins was constructively denied counsel at his competency hearing, we must determine the proper remedy for this constitutional violation. Mr. Collins contends that he is entitled to automatic reversal because violation of his Sixth Amendment rights constituted structural error. A Sixth Amendment violation requires automatic reversal only when the constitutional

violation pervades the entire criminal proceeding. *Satterwhite v. Texas*, 486 U.S. 249, 257-58 (1988). In those circumstances, the constitutional violation affects the "framework within which the trial proceeds, rather than simply [causing] an error in the trial process itself." *Arizona v. Fulminante*, 499 U.S. 279, 310 (1991). Here, deprivation of the right to counsel at Mr. Collins's competency hearing affected the framework within which the trial proceeded only if it resulted in Mr. Collins standing trial while incompetent.

Thus, the pertinent question is whether the deprivation of Mr. Collins's Sixth Amendment right to counsel resulted in the district court erroneously finding him competent to stand trial. That question is not easily answered. Competency hearings address a defendant's psychological state of mind at a specific point in time. A defendant may be competent to stand trial today, even though incompetent to assist in his defense six months ago. For that reason, the Supreme Court has disfavored retrospective competency hearings, *see Drope v. Missouri*, 420 U.S. 162, 183 (1975), and this Circuit has permitted them only in limited circumstances, *see McGregor v. Gibson*, 248 F.3d 946, 962-63 (10th Cir. 2001) (en banc). Four factors are considered in assessing whether a meaningful retrospective competency determination can be made consistent with a defendant's due process rights:

> (1) [T]he passage of time, (2) the availability of contemporaneous medical evidence, including medical records and prior competency

-14-

determinations, (3) any statements by the defendant in the trial record, and (4) the availability of individuals and trial witnesses, both experts and non-experts, who were in a position to interact with defendant before and during trial.

*Id.*

Here, as in *McGregor*, the factors weigh against conducting a retrospective competency hearing. *See id.* at 963 (four factor test not satisfied where eleven years passed since the date of the competency hearing, only one psychiatrist testified for the state at the defendant's initial competency hearing, and defense counsel raised significant questions as to the defendant's competency). A modest amount of time, three years, has passed since Mr. Collins's competency evaluation and hearing. Mr. Collins made few remarks during his proceedings, but at his sentencing hearing he expressed his strong belief that his lawyers were conspiring with the government to prosecute him and that the "government's been after [him] for years." Mr. Collins's substitute defense counsel, Mr. Prichard, questioned Mr. Collins's competency immediately before trial, stating that he was "concerned as to [Mr. Collins's] competence today, and specifically, his ability to meaningfully assist [Mr. Prichard] during his trial," and explaining that he did "not sense a great deal of logic in terms of [his] client's comprehension of the issues and the consequences of this case." Finally, and most importantly, there is insufficient contemporaneous medical evidence to permit a retrospective competency determination. There was no medical testimony presented at Mr.

Collins's competency hearing, and Mr. Collins did not have the opportunity to cross-examine Dr. Womack, the only evaluating psychologist, as to his finding of competency. This lack of contemporaneous medical evidence regarding Mr. Collins's competency at his competency hearing three years ago, coupled with Mr. Prichard's serious and detailed questions regarding Mr. Collins's competency immediately before trial and the paucity of record evidence on the subject, lead us to conclude that a new hearing on the limited issue of competency will not ensure that Mr. Collins was indeed competent to stand trial in 2003.

Another possible remedy would be to order a limited remand of the case to determine whether counsel could have made certain decisions or arguments that might have changed the result of the competency hearing. This was the approach taken by the D.C. Circuit in *United States v. Klat,* 156 F.3d 1258, 1264 (D.C. Cir. 1998). In *Klat*, a defendant appeared without counsel at her competency hearing because the district court permitted counsel to withdraw at her arraignment and did not appoint new counsel after the defendant had filed a request to proceed *pro se*. *Id.* at 1261-62. The court found that the defendant could not knowingly and voluntarily waive her right to counsel until the issue of competency was resolved. *Id.* 1262-63. Accordingly, the defendant in *Klat* was entitled to counsel at her competency hearing and the district court's failure to appoint counsel for that hearing constituted a Sixth Amendment violation. *Id.* Rather than reversing the

defendant's conviction, however, the D.C. Circuit remanded the case to the district court for a determination of whether counsel could have made tactical decisions or arguments that might have changed the outcome of the competency hearing. *Id.* at 1264. The D.C. Circuit held that if "the district court determines that the competency hearing could have come out differently absent the Sixth Amendment violation, reversal is required because the violation . . . would serve to contaminate the entire criminal proceeding." *Id.*

We need not decide whether the remedy proposed in *Klat* is the appropriate remedy for this type of constitutional violation because the record available in this case enables us to answer the question the D.C. Circuit remanded to the district court. Mr. L'Esperance's statement to the district court at the competency hearing, while limited, did mention military records and site reports that related to the issue of competency. Even the prosecution admitted that the undisclosed information "may be relevant" to the competency issue. Thus, the transcript from the original competency hearing reveals an investigation, tactical decisions, and possible arguments that could have been made by counsel on behalf of Mr. Collins. Where, as here, the record reveals arguments that could have been made by counsel at the competency hearing, reversal is appropriate.

Because evidence could have been introduced and arguments made that likely could have affected the outcome of Mr. Collins's competency hearings, it is

impossible to say that the violation of his Sixth Amendment rights did not pervade his entire trial. Accordingly, we must reverse Mr. Collins's conviction and order a new trial. If a question as to Mr. Collins's competency again arises, the district court should order a psychological evaluation of Mr. Collins's current mental state and conduct a new competency hearing, at which Mr. Collins is represented by counsel.[1]

## CONCLUSION

For the reasons set forth above, we **VACATE** Mr. Collins's conviction and **REMAND** for a new trial consistent with this opinion.

---

[1] Mr. Collins also challenges his sentence under *United States v. Booker*, 125 S. Ct. 738 (2005). Because we reverse his conviction and order a new trial, we need not address this issue here.