HOLMES, Circuit Judge,
concurring in part and dissenting in part.
I write separately because I disagree with the majority’s use of a disfavored remedy to redress the constitutional violation in this case. Although I endorse the majority’s conclusion that Ms. Bergman’s Sixth Amendment right to counsel was violated when the district court found her to be restored to competency while she was represented by someone who was not an attorney, I cannot agree with the majority’s chosen remedy for this violation. I believe that it is inappropriate to remand *1152 this matter to the district court for an evidentiary hearing to determine whether it is possible to make a retrospective competency determination. It is inappropriate to do so because the government has not affirmatively demonstrated that such a nunc pro tunc determination of the state of Ms. Bergman’s competency on October 23, 2007 is warranted. Absent such a showing, we should not choose sua sponte to apply this remedy, which we previously have permitted “only in limited circumstances,” United States v. Collins, 430 F.3d 1260, 1267 (10th Cir.2005), because there is nothing in the record to suggest that the facts of this case justify the application of this disfavored remedy. Retrospective competency determinations are inherently difficult to conduct in a meaningful manner and that difficulty is exacerbated in this case due to the paucity of the record before us. Consequently, I would remand this matter to the district court, directing it to vacate Ms. Bergman’s convictions and to proceed with a new trial, provided that she currently is competent to participate in one. As a result, I would not reach Ms. Bergman’s other arguments on appeal, most notably her sentencing arguments.
I. Background
In order to fully understand the constitutional violation in this case and appropriateness vel non of the majority’s chosen remedy, a recitation of the somewhat unusual facts is necessary. Defendant-Appellant Gwen Bergman originally pleaded guilty to a two-count information alleging a violation of the Travel Act, 18 U.S.C. § 1952(a)(1) and (3), and seeking a forfeiture of the property derived from that violation pursuant to 18 U.S.C. §§ 982, 1956(c)(7), and 1961(1), and 28 U.S.C. § 2461(c). United States v. Bergman, 191 Fed.Appx. 762, 763 (10th Cir.2006). These charges arose from “Ms. Bergman’s payment of $30,000 to an undercover law enforcement agent (posing as a ‘hit man’) to murder her ex-husband.” Id. She was sentenced to five years’ imprisonment followed by three years of supervised release. Id. She appealed her conviction and sentence to this court. Id. Before oral argument could be held in that appeal, however, “the government confessed error” and admitted that the facts in the plea agreement did not satisfy the elements of the Travel Act violation. Id. We “agree[d] with the government’s ... position” and vacated the plea agreement and Ms. Bergman’s convictions and remanded the case to the district court. Id.
The mandate from that appeal issued on September 13, 2006. That same day, Ms. Bergman was charged by a second indictment with two counts of violating 18 U.S.C. § 1958 (murder-for-hire and conspiracy to commit murder-for-hire) and with forfeiture. Defense counsel from the Federal Public Defender’s Office[3] thereafter filed a Motion to Determine Competency of Defendant, over Ms. Bergman’s objection. Because counsel had “reasonable cause to believe the Defendant may presently be suffering from mental disease o[r] defect rendering her mentally incompetent,” R., Yol. I, Doc. 121, at 1-2 (Mot. to Determine Competency of Defendant, filed Oct. 18, 2006), he requested that the district court order a competency hearing pursuant to 18 U.S.C. § 4241.[4] Section 4241 provides in relevant part:
*1153 At any time after the commencement of a prosecution for an offense and prior to the sentencing of the defendant ... the defendant or the attorney for the Government may file a motion for a hearing to determine the mental competency of the defendant. The court shall grant the motion, or shall order such a hearing on its own motion, if there is reasonable cause to believe that the defendant may presently be suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense.
18 U.S.C. § 4241(a). Defense counsel also requested that a psychiatric or psychological examination of Ms. Bergman be conducted pursuant to 18 U.S.C. § 4247(b) and (c), which govern the court’s power to order such an examination and detail what findings and other information should be included in the resulting psychiatric report.
Due to the conflict between Ms. Bergman’s expressed desire to represent herself and defense counsel’s assertion that he had reasonable cause to believe that she was incompetent, the district court appointed an attorney, Martha Eskesen, as special counsel to represent Ms. Bergman’s interests in connection with the competency motion. The court ordered a psychiatric or psychological examination of Ms. Bergman and scheduled a competency hearing.
Two psychiatrists evaluated Ms. Bergman and submitted separate reports to the district court. Dr. Susan Bograd and Dr. Karen Fukutaki both opined that Ms. Bergman was suffering from a mental disease or defect that rendered her incapable of understanding the nature and course of the proceedings against her, of participating or assisting in her defense, or of cooperating with defense counsel.
The February 22, 2007 competency hearing was held pursuant to 18 U.S.C. § § 4241(c) and 4247(d), which provide that the defendant “shall be represented by counsel” and “shall be afforded an opportunity to testify, to present evidence, to subpoena witnesses on his behalf, and to confront and cross-examine witnesses who appear at the hearing.” 18 U.S.C. § 4247(d); see also 18 U.S.C. § 4241(c) (providing that “[t]he [competency] hearing shall be conducted pursuant to the provisions of section 4247(d)”). Defense counsel and Special Counsel Eskesen both were present at the hearing, as was Ms. Bergman. The government called both evaluating doctors to testify. Dr. Fukutaki testified that she questioned Ms. Bergman’s understanding of a plea bargain, which was “very limited,” and that the “major problems” with her competency arose from Ms. Bergman’s perception of the seriousness of the evidence against her, which “did not appear to be rational.” R., Vol. VIII, Tr. at 10-11, 23 (Competency Hearing, dated Feb. 22, 2007). Dr. Fukutaki testified that Ms. Bergman appeared to have “fixed delusion[s]” as a result of a mental disease or defect that would render her unable to assist in her own defense. Id. at 13-14, 27, 36. Although Dr. Fukutaki did not definitively diagnose Ms. Bergman with a particular psychological disorder, she opined that Ms. Bergman could be suffering from a range of disor *1154 ders, including post-traumatic stress disorder, delusional disorder, a personality disorder, or a combination of those.
Dr. Bograd testified that she believed Ms. Bergman would have “some substantial difficulty” assisting in her own defense as a result of a mental disease or defect. Id. at 41-43. Although Dr. Bograd believed it was possible that Ms. Bergman suffered from a personality disorder, she definitively diagnosed Ms. Bergman as having a delusional disorder of the persecutory type that left her “not able to face the reality of the charges against her.” Id. at 42^4. Dr. Bograd testified that Ms. Bergman’s inability to appreciate the nature of the charges against her was “of psychotic proportions.... And I think that that makes it where she is unable to effectively assist an attorney to defend her against those charges.” Id. at 44; see also id. at 50. Dr. Bograd opined that she did not think Ms. Bergman would agree with the diagnosis that she suffers from a mental disease or defect because Ms. Bergman believed that she was fine. Both doctors opined that Ms. Bergman’s ability to assist in her own defense would not be restored were she to be given a different attorney. At the hearing, defense counsel and Special Counsel Eskesen each had the opportunity to cross-examine the doctors and were able to question their conclusions and to determine what methods and evidence that the doctors used to reach their assessments. The district court also asked its own questions of each witness.
After a brief recess, the competency hearing resumed and Ms. Bergman took the stand. Ms. Bergman testified as to her disagreement with the doctors’ reports, her wish to be represented by Ms. Eskesen rather than current defense counsel, and her understanding of the proceedings against her. She then briefly was cross-examined by the government. Finally, each attorney was allowed to present arguments to the court on the issue of competency.
At the conclusion of the competency hearing, the district court found by a preponderance of the evidence that Ms. Bergman was incompetent under 18 U.S.C. § 4241(d).[5] In accordance with that section, the court remanded her to the custody of the Attorney General for hospitalization for a reasonable period not to exceed four months. Ms. Bergman filed a notice of appeal from that order.
The government filed a motion with the district court on July 31, 2007, asking the *1155 court to authorize the involuntary administration of psychotropic medication to Ms. Bergman in an effort to restore her to competency. The government relayed to the court that BOP clinical staff had evaluated Ms. Bergman and concluded that she still suffered from a mental disease or defect which rendered her incompetent, but also had concluded that “there is a substantial probability that in the foreseeable future Ms. Bergman could obtain the capacity to allow trial to proceed should she receive appropriate treatment with psychotropic medication.” R, Vol. I, Doc. 235, at 1-2 (Mot. to Authorize Involuntary Administration of Psychotropic Medication, filed July 31, 2007). Because Ms. Bergman had refused such treatment, the government sought an order allowing BOP clinical staff to medicate her involuntarily. Ms. Bergman, through counsel, objected to the motion, requested a hearing, and requested that she be permitted to attend the hearing. The district court scheduled a hearing on that motion for October 23, 2007.
Howard O. Kieffer of Santa Ana, California, entered an appearance as retained defense counsel for Ms. Bergman on October 9, 2007. As a result, Ms. Bergman’s public defender was permitted to withdraw. Mr. Kieffer would represent Ms. Bergman from October 9, 2007 until July 9, 2008, when it became apparent that he was not qualified to practice law. Indeed, he had never been to law school or graduated from college and was a convicted felon.[6]
The government thereafter filed a notice to withdraw its motion regarding involuntary medication because it learned, from discussions with BOP staff, that staff now believed that Ms. Bergman was “competent to proceed without forced medication.” R., Vol. I., Doc. 250, at 2 (Government’s Notice to Withdraw Previous Motion to Force Medicate Defendant, filed Oct. 16, 2007). The motion hearing nevertheless went forward as scheduled on Oc *1156 tober 23, 2007. Ms. Bergman was present, although Mr. Kieffer appeared only by telephone. There is no transcript from this hearing in the record before us, so what we know about the motion hearing we have learned from the three-page minute entry on the district court’s docket sheet. It reveals that the district court “ha[d] received a report indicating the defendant would be competent to proceed with [sic] raises the issue of whether the Court has jurisdiction with a notice of appeal pending.” R., Vol. I, Doc. 255, at 1 (Courtroom Minutes, Hearing Regarding Forced Medication, filed Oct. 23, 2007). The government apparently was concerned that a competency hearing could not be held during the pendency of a notice to appeal. See id. (“Mr. Conner [government counsel] indicate[d] he [wa]s unaware of any case law that permits a competency hearing to proceed during the pendency of a notice of appeal.”). “Mr. Kieffer indicate[d] that in light of the Bureau of Prisons[’] findings that the defendant [wa]s competent to proceed, the notice of appeal [wa]s now moot and he w[ould] be withdrawing the notice of appeal.” [7] Id. at 2. There evidently was some “[discussion regarding the need for a competency hearing or if the matter c[ould] be resolved if the Court adopt[ed] the findings in the report by the Bureau of Prisons.” Id. The government requested and the court granted a brief recess “to decide whether the Court should enter findings based on the report by [the] Bureau of Prisons or whether he would want live testimony for purposes of the record.” Id.
After the recess, Mr. Kieffer tendered a copy of the voluntary dismissal of the Notice of Appeal to the court. Then there was some “[d]iscussion on how the court should proceed.” Id. The government “indicate[d] [it was] prepared to [sic] the competency hearing and requested] the Court take judicial notice to [sic] the report from [FMC] Carswell and for the Court to rule on the issue of competency.” Id. The minute entry reflects that “Mr. Kieffer join[ed] Mr. Conner’s comments.” Id. There is no indication from the minute entry (or the record at large) that the district court ever formally found by a preponderance of the evidence that Ms. Bergman had been restored to competency, but it is obvious from the court’s subsequent actions that the court must have concluded that Ms. Bergman was now competent to stand trial. At the same hearing, the court arraigned Ms. Bergman for a second time and apparently then attempted to take Ms. Bergman’s guilty plea. More specifically, the minute entry indicates that the district court “inquire[d] if the defendant admit[ted] essential elements of the crimes in counts 1 and 2 and determine^] that she [wa]s unable to do so.” Id. at 3. After a second recess, the court “further inquired] of the defendant ... regarding excepting [sic] responsibility to the crimes she [wa]s pleading guilty to.” Id. The court did not accept Ms. Bergman’s guilty plea and set the case for trial.
As the majority accurately indicates, the district court found Ms. Bergman to be restored to competency solely based on the BOP’s report. See Maj. Op. at 1145-46. Although the minute entry reveals that the “Court h[ad] received a report indicating the defendant would be competent to proceed,” R., Vol. I, Doc. 255, at 1, there is no *1157 indication either from the docket sheet itself or the documents available to us on appeal that the actual BOP report is or was ever part of the record in this case. Moreover, the government has not given us any guidance as to where that report may be found.
After the district court determined that Ms. Bergman had been restored to competency, Ms. Bergman was charged in a three-count superceding indictment on December 3, 2007, with: (1) using and causing another to use the mail and a facility in interstate commerce (cell phones and wire transfers) with the intent that a murder-for-hire be committed in violation of 18 U.S.C. § 1958; (2) conspiracy to commit murder-for-hire in violation of 18 U.S.C. § 1958; and (3) forfeiture of property constituting or derived from proceeds obtained from the charges ($29,000 and a $1000 postal order) pursuant to 18 U.S.C. § § 981(a)(1)(C), 1956(c)(7), 1961(1) and 28 U.S.C. § 2461(c). She again attempted to plead guilty to those charges on December 21, 2007, at a hearing at which Mr. Kieffer appeared telephonically, but the district court rejected her plea because Ms. Bergman did not admit to having the requisite intent for the crimes charged.[8] The case proceeded to trial; it began on May 5, 2009. E.J. Hurst, II, a Maryland attorney, sat second chair at trial with Mr. Kieffer.[9] Ms. Bergman waived her right to a jury trial, so the case was tried to the district court. It lasted five days.[10]
Before Ms. Bergman was sentenced, Mr. Kieffer’s fraud was exposed. The district court issued an order stating:
It has been suggested that Howard O. Keiffer [sic] who entered his appearance as Defendant’s counsel is not a licensed attorney. He has now been suspended and removed from the rol[l] of attorneys authorized to practice before this Court by the Court’s Disciplinary Panel. Given the fact that Mr. Keiffer [sic] represented the Defendant in a trial to this court without a jury which concluded with a guilty verdict, I am considering ordering a mistrial and vacating the verdict. Pursuant to Fed.R.Crim.P. 26.3, the parties shall file their comments regarding the propriety of such an order on or before July 18, 2008.
R.,' Vol. II, Doc. 364, at 1-2 (Dist. Ct. Order, filed July 8, 2008). The next day, Mr. Kieffer filed a Notice of Withdrawal of Counsel. Although the government requested a hearing on the issue, one was never held. At a status conference on September 15, 2008, the district court stated that “I am proceeding with the basic premise that [Mr. Kieffer] tried this case as a non-lawyer with Mr. Hurst’s help.” R., Vol. XX, Tr. at 4 (Status Conference, dated Sept. 15, 2008). Neither Mr. Hurst nor Ms. Eskesen, who was subsequently appointed as defense counsel when Mr. Hurst was permitted to withdraw from his representation of Ms. Bergman, requested a mistrial.[11]
*1158 On December 4, 2008, the district court entered judgment against Ms. Bergman on her convictions as to Counts 1 and 2 of the Superceding Indictment and sentenced her to 108 months’ imprisonment on each count, to be served concurrently, followed by 3 years of supervised release. The court dismissed Count 3, the forfeiture count, on the government’s motion. In sentencing Ms. Bergman, the court denied her requests for a downward departure based on (1) her mental state and (2) Mr. Kieffer’s performance.
Ms. Bergman timely appealed and we have jurisdiction over this appeal pursuant to 28 U.S.C. § 1291.
II. Discussion
On appeal, Ms. Bergman contends that her Sixth Amendment right to counsel was violated: (1) when she was found competent to stand trial, and (2) when she stood trial while represented by someone fraudulently posing as an attorney. She also argues that the sentence imposed was unreasonable under the circumstances. I would find that Ms. Bergman’s Sixth Amendment right to counsel was violated when the district court found her to be restored to competency while she was not represented by an attorney. To remedy the Sixth Amendment violation, rather than remand for the district court to deter: mine if a retrospective competency determination is possible, I would vacate Ms. Bergman’s convictions and remand the case for a new trial.
A. Sixth Amendment Violation
The Sixth Amendment entitles a defendant to the assistance of counsel at every critical stage of a criminal prosecution, which includes a competency hearing. Collins, 430 F.3d at 1264; cf. 18 U.S.C. § 4247(d) (providing that if a defendant is financially unable to obtain representation at a competency hearing, counsel shall be appointed for her). “Critical stages are those steps of a criminal proceeding! ] that hold significant consequences for the accused.” Collins, 430 F.3d at 1264 (citing Bell v. Cone, 535 U.S. 685, 695-96, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002)). “Thus a defendant is entitled to counsel at any proceeding where an attorney’s assistance may avoid the substantial prejudice that could otherwise result from the proceeding.” Id. (citing Coleman v. Alabama, 399 U.S. 1, 9, 90 S.Ct. 1999, 26 L.Ed.2d 387 (1970)).
It must logically follow that, if a competency hearing is a critical stage, then the motion hearing held on October 23, 2007, was also a critical stage. Although the October 23, 2007 motion hearing was not a true competency hearing held pursuant to the statutory framework governing such hearings, it was at this hearing that the district court ultimately resolved the issue of Ms. Bergman’s competency. That hearing therefore must be considered a critical stage because a competency determination carries significant potential consequences for a criminal defendant. “It is well-settled that the ‘criminal trial of an incompetent defendant violates due process.’ ” McGregor v. Gibson, 248 F.3d 946, 951 (10th Cir.2001) (en banc) (quoting Medina v. California, 505 U.S. 437, 453, 112 S.Ct. 2572, 120 L.Ed.2d 353 (1992)). “This ‘prohibition is fundamental to an adversary system of justice.’ ” Id. (quoting Drope v. Missouri, 420 U.S. 162, 172, 95 S.Ct. 896, 43 L.Ed.2d 103 (1975)). In making a competency determination, a court must consider “whether [the defendant] has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding — -and whether he has a rational as well as factual understanding of the proceedings against him.” Dusky v. United States, 362 U.S. 402, 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960) (per curiam) (internal quotation marks omitted); see also McGregor, 248 F.3d at 952.
*1159 At the October 23, 2007 hearing, the district court determined that Ms. Bergman had been restored to competency (making her eligible for trial) — a decision that held significant consequences for Ms. Bergman. Accordingly, as the majority concluded, because the October 23, 2007 hearing was a critical stage of the criminal proceedings against Ms. Bergman, she was entitled to the assistance of counsel at that hearing.
Moreover, I agree with the majority’s determination that Ms. Bergman’s Sixth Amendment right to counsel was violated because she was represented at the hearing solely by “phoney counsel.” Maj. Op. at 1147. I reach this conclusion pursuant to United States v. Cronic, 466 U.S. 648, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984), because Ms. Bergman was denied the assistance of counsel altogether, regardless of counsel’s efficacy vel non. See Wright v. Van Patten, 552 U.S. 120, 124-25, 124 n. * (2008) (“Cronic, not Strickland, applies ... when counsel [is] either totally absent, or prevented from assisting the accused during a critical stage of the proceeding” or when “counsel entirely fails to subject the prosecution’s case to meaningful adversarial testing.” (internal quotation marks omitted)); Collins, 430 F.3d at 1264-66 (finding a constructive denial of counsel under Cronic because counsel failed to subject prosecution’s assertion of competency to adversarial testing, saying that he would “not comment”). Under Cronic, Ms. Bergman need not show that she suffered any prejudice as a result of not being represented by an attorney at the October 23, 2007 hearing, despite the government’s repeated insistence that she must demonstrate prejudice. Rather, “where there has been a ‘complete absence of adversarial testing,’ a Sixth Amendment violation is established under Cronic without the showing of prejudice that is otherwise required under Strickland.” Collins, 430 F.3d at 1265 (citing Cronic, 466 U.S. at 654, 104 S.Ct. 2039; Strickland v. Washington, 466 U.S. 668, 692, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)); see also Cronic, 466 U.S. at 659, 104 S.Ct. 2039 (“The presumption that counsel’s assistance is essential requires us to conclude that a trial is unfair if the accused is denied counsel at a critical stage of his trial.”).
Although the majority does not make this point explicitly, I understand the majority to have followed Cronic and I write on this issue only for clarification.[12] The majority must have followed Cronic because it adopted a per se rule of ineffectiveness without requiring Ms. Bergman to prove prejudice. Maj. Op. at 1148. More specifically, the majority states that it
adopt[s] a narrow per se rule of ineffectiveness where a defendant is, unbeknownst to him, represented by someone who has not been admitted to any bar based on his failure to ever meet the substantive requirements for the practice of law. Thus, Bergman was denied counsel at the October 2007 hearing, in violation of her Sixth Amendment right, regardless of her ability to prove prejudice.
Id. (citation omitted) (internal quotation marks omitted).[13] The majority could not *1160 have adopted this type of rule under Strickland. Cf. Strickland, 466 U.S. at 691-92, 104 S.Ct. 2052 (“An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment----[A]ny deficiencies in counsel’s performance must be prejudicial to the defense in order to constitute ineffective assistance under the Constitution.” (citation omitted)).
Accordingly, pursuant to Cronic, the Sixth Amendment’s guarantee to representation by counsel cannot be satisfied by a non-attorney who has failed to meet the substantive requirements for admission to practice law before any bar. See Novak, 903 F.2d at 886-88; Solina, 709 F.2d at 161, 167-69. Mr. Kieffer never attended law school, or even obtained a college degree, all of which would bar him from the legitimate practice of law. When Mr. Kieffer falsely purported to be an attorney, he deceived Ms. Bergman, the government, and the district court, and singlehandedly caused Ms. Bergman to be deprived of her Sixth Amendment right to be represented by counsel.
B. Remedy
Having concluded that Ms. Bergman’s Sixth Amendment right to counsel was violated, we must determine the proper remedy to redress that constitutional injury. Ms. Bergman has argued that we should reverse her conviction, a remedy rejected by the majority. I disagree with the majority’s decision to remand this matter to the district court for it to hold a hearing to determine whether it is possible to make a retrospective competency determination. That course of action is inappropriate in this case because: (1) the government has failed to request that remedy or to make any affirmative showing that we should not reverse Ms. Bergman’s conviction and remand for a new trial as we did under analogous circumstances in Collins, 430 F.3d at 1267-68, and (2) there are no extraordinary circumstances present in this case that warrant our sua sponte application of a disfavored remedy, particularly in light of the paucity of evidence in the record on this issue.
It is well established that retrospective competency determinations are a disfavored remedy permitted “only in limited circumstances.” Collins, 430 F.3d at 1267 (citing Drope, 420 U.S. at 183, 95 S.Ct. 896; McGregor, 248 F.3d at 962-63); see also Pate v. Robinson, 383 U.S. 375, 387, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966); Dusky, 362 U.S. at 402-03, 80 S.Ct. 788; Clayton v. Gibson, 199 F.3d 1162, 1169 (10th Cir. 1999). Its disfavored status arises from the inherent difficulties in conducting such a determination. A retrospective competency determination necessarily must focus on “a defendant’s psychological state of mind at a specific [antecedent] point in time,” Collins, 430 F.3d at 1267, which in Ms. Bergman’s case would be her mental state as it existed three years ago. “A defendant may be competent to stand trial today, even though incompetent to assist in [her] defense six months ago.” Id. The retrospective focus of that determination, and the passage of time, make such a determination difficult even “under the most favorable circumstances,” Drope, 420 U.S. at 183, 95 S.Ct. 896, and is particularly inappropriate in this case, as I shall explain.
First, we should not choose to apply a disfavored remedy in this case because the government did not request that remedy and made no affirmative showing that a retrospective competency determination was warranted. The government did not indicate what remedy this court should apply were we to find, as we have, that Ms. Bergman’s Sixth Amendment right to counsel was violated. Rather, the government chose to place all of its proverbial *1161 eggs in one basket, arguing only that Ms. Bergman’s constitutional rights were not violated and that any error that did occur was not prejudicial to Ms. Bergman under Strickland because she wished to be found competent to stand trial. Now that we have rejected that argument, the government has offered us no guidance whatsoever on how to remedy the Sixth Amendment violation.
As with other disfavored remedies, the government bears a heightened burden to demonstrate that a particular case falls within the “limited circumstances” under which a retrospective competency determination is warranted. Collins, 430 F.3d at 1267. In this respect, a retrospective competency determination may be analogized to another well-known category of disfavored remedies in this circuit — specifically, three types of injunctions that we have found to be “specifically disfavored.”[14] See O Centro Espirita Beneficiente Uniao Do Vegetal v. Ashcroft, 389 F.3d 973, 975 (10th Cir.2004) (en banc) (citing, affirming in part, and modifying in part SCFC ILC, Inc. v. Visa USA, Inc., 936 F.2d 1096, 1098-99 (10th Cir.1991)), aff'd and remanded sub nom on other grounds, Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal, 546 U.S. 418, 126 S.Ct. 1211, 163 L.Ed.2d 1017 (2006); see also Schrier v. Univ. of Colo., 427 F.3d 1253, 1259-62 (10th Cir.2005). Because they are disfavored, “if a movant seeks a preliminary injunction that falls into one of th[ose] three categories ... the movant must satisfy a heightened burden.” O Centro Espirita Beneficiente Uniao Do Vegetal, 389 F.3d at 975. When a disfavored injunction is sought, a court must “more ... closely scrutinize[ ] [the requested injunction] to assure that the exigencies of the case support the granting of a remedy that is extraordinary even in the normal course.” Id.; see also CBS, Inc. v. Davis, 510 U.S. 1315, 1316-17, 114 S.Ct. 912, 127 L.Ed.2d 358 (1994) (staying a state court’s preliminary injunction that amounted to a prior restraint on the media because prior restraints are “particularly disfavored” that are acceptable only in “exceptional cases” and because the party seeking the injunction had not met its burden in demonstrating that “the evil that would result from the reportage is both great and certain and cannot be mitigated by less intrusive measures” (internal quotation marks omitted)); Martinez v. Mathews, 544 F.2d 1233, 1243 (5th Cir.1976) (“Mandatory preliminary relief, which goes well beyond simply maintaining the status quo pendente lite, is particularly disfavored, and should not be issued unless the facts and law clearly favor the moving party.”).
This holds true for other types of remedies and legal devices that possess a disfavored status in the law — viz., there is a higher burden on the potential beneficiary to show that its application is warranted. Cf. Pressmam-Gutman Co. v. First Union Nat’l Bank (In re Pressmam-Gutman Co.), 459 F.3d 383, 398-403 (3d Cir.2006) (discussing high burden on petitioner seeking writ of mandamus, a disfavored “extraordinary remedy” and denying the writ because petitioner could not demonstrate that it possessed a right to mandamus that was “ ‘clear and indisputable’ ”); Tamko Roofing Prods., Inc. v. Smith Eng’g Co., 450 F.3d 822, 830-31 (8th Cir.2006) (discussing prima facie tort claim, disfavored under Missouri law, as a “particular and limited theory of recovery” and finding *1162 that plaintiff had not met its “heavy” burden in proving claim (internal quotation marks omitted)); Van Ness Townhouses v. Mar Inds. Corp., 862 F.2d 754, 758 (9th Cir.1988) (“[W]aiver of the right to arbitration is disfavored because it is a contractual right, and thus any party arguing waiver of arbitration bears a heavy burden of proof.” (internal quotation marks omitted)). In this case, the government has not met its heightened burden to justify a disfavored remedy (i.e., a retrospective competency hearing). Indeed, the government made no attempt to do so; it never argued that this case qualifies as one of the “limited circumstances” in which a retrospective competency determination is warranted.
Moreover, even if we were to overlook the government’s failure to meet its burden, and choose to apply this disfavored remedy sua sponte, there must be some extraordinary justification for our doing so. Cf. Univ. of Pittsburgh v. Varian Med. Sys., Inc., 569 F.3d 1328, 1334-35 (Fed.Cir.2009) (holding that “[bjecause dismissal with prejudice is a harsh sanction that is disfavored under Third Circuit law and is not justified on this record, the dismissal should have been without prejudice” and stating that “dismissal [with prejudice] is a drastic sanction and should be reserved for those cases where there is a clear record of delay or contumacious conduct by the plaintiff’ (internal quotation marks omitted)); United States v. Michael, 17 F.3d 1383, 1386 (11th Cir. 1994) (“Although federal courts possess the authority to dismiss an indictment for governmental misconduct, dismissal is an extreme sanction which should be infrequently utilized.... Dismissal is only favored in the most egregious cases.” (alteration in original) (internal quotation marks omitted)). There is no extraordinary justification apparent from the record in this case. Indeed, the facts of this case indicate quite the opposite.
As in Collins, due to the paucity of the record before us on this issue, we cannot answer the question of “whether the deprivation of [Ms. Bergman’s] Sixth Amendment right to counsel resulted in the district court erroneously finding [her] competent to stand trial.” 430 F.3d at 1267. The four factors enumerated in Collins and McGregor for assessing whether a retrospective competency determination can be made in a way that is meaningful and consistent with a defendant’s due process rights all weigh against the application of that remedy in this case. “A ‘meaningful’ [retrospective competency] determination is possible where the state of the record, together with such additional evidence as may be relevant and available, permits an accurate assessment of the defendant’s condition at the time of the original ... proceedings.” Clayton, 199 F.3d at 1169 (internal quotation marks omitted). As we discussed in Collins,
[flour factors are considered in assessing whether a meaningful retrospective competency determination can be made consistent with a defendant’s due process rights:
“(1) [T]he passage of time, (2) the availability of contemporaneous medical evidence, including medical records and prior competency determinations, (3) any statements by the defendant in the trial record, and (4) the availability of individuals and trial witnesses, both experts and non-experts, who were in a position to interact with defendant before and during trial.”
430 F.3d at 1267 (second alteration in original) (quoting McGregor, 248 F.3d at 962-63).
In Collins, we found that the factors weighed against a retrospective competency determination: three years had passed since the competency evaluation and hearing; the defendant had indicated at his *1163 sentencing hearing that he believed his lawyers and the government were conspiring to prosecute him; and substitute defense counsel had questioned his client’s competency before trial. Id. “[M]ost importantly, there [was] insufficient contemporaneous medical evidence to permit a retrospective competency determination” because there was no medical testimony presented at the competency hearing and the defendant did not have the opportunity to cross-examine the only evaluating psychologist as to his finding of competency. Id. We concluded that
[t]his lack of contemporaneous medical evidence regarding Mr. Collins’s competency at his competency hearing three years ago, coupled with [counsel’s] serious and detailed questions regarding Mr. Collins’s competency immediately before trial and the paucity of record evidence on the subject, lead us to conclude that a new hearing on the limited issue of competency will not ensure that Mr. Collins was indeed competent to stand trial in 2003.
Id. Consequently, we held that these facts did not constitute the appropriate “limited circumstances” that would justify a retrospective competency hearing. Id. Rather, “[b]ecause evidence could have been introduced and arguments made that likely could have affected the outcome of Mr. Collins’s competency hearings, it is impossible to say that the violation of his Sixth Amendment rights did not pervade his entire trial.” Id. at 1268. Accordingly, the Collins court reversed the defendant’s conviction and ordered a new trial, directing that “[i]f a question as to Mr. Collins’s competency again arises, the district court should order a psychological evaluation of Mr. Collins’s current mental state and conduct a new competency hearing, at which Mr. Collins is represented by counsel.” Id.
In my view, the factors in Collins that weighed against conducting a retrospective competency determination are not only present in this case, they are heightened. The motion hearing of October 23, 2007 was in every way an inadequate proceeding by which to determine the state of Ms. Bergman’s competency. Perhaps the best way to illustrate the hearing’s inadequacy is to compare the competency hearing that took place on February 22, 2007 to the skeletal proceedings on October 23, 2007, for which we do not even have a transcript. At the February 22, 2007 hearing, the two examining doctors testified and were questioned by the government, defense counsel, and the court. Their testimony lasted for at least two hours. Ms. Bergman was also given an opportunity to testify and counsel presented arguments on the issue of competency. Moreover, the doctors’ reports were both admitted into evidence as sealed documents and form part of the record before us on appeal. By contrast, on October 23, 2007, the BOP staffs opinion that Ms. Bergman had been restored to competency did not, as far as we can tell, become part of the record. That opinion also was not subjected to any adversarial testing— no expert testified and Ms. Bergman had no opportunity to cross-examine any expert.
Furthermore, the statutory framework for a competency hearing was not followed. 18 U.S.C. § 4241(e) provides that the district court was required to hold a hearing to determine if Ms. Bergman had been restored to competency.[15] That hearing *1164 must conform to the provisions of § 4247(d), which requires that the defendant “shall be represented by counsel” and “shall be afforded an opportunity to testify, to present evidence, to subpoena witnesses on his behalf, and to confront and cross-examine witnesses who appear at the hearing.” 18 U.S.C. § 4247(d). If, after a hearing, the court finds by a preponderance of the evidence that the defendant has recovered to such an extent that she is able to understand the nature and consequences of the proceedings against her and to assist in her defense, the court is required to order her immediate discharge from the facility in which she was hospitalized and set the date for trial. Id. § 4241(e). The record here indicates that these procedures were not followed.
The sparse record leaves us with several crucial and unanswerable questions. For example, we do not know the precise contents of the BOP staffs report opining that Ms. Bergman had been restored to competency. Because we cannot locate the report in the record in this case, we do not know whether the report even still exists to be reexamined in the context of a retrospective competency hearing. Perhaps more importantly, because there was no adversarial testing or formal competency hearing on October 23, 2007, we also do not know (and, indeed, cannot know) if there would have been any contrary evidence that may have shown that Ms. Bergman in fact had not been restored to competency on October 23, 2007. See Collins, 430 F.3d at 1267. There simply is nothing in the record to cause me to believe that a retrospective competency determination would be meaningful or even possible in this case. In providing an adequate and effective remedy for a constitutional violation, we should not dwell in the realm of conjecture, especially when choosing a disfavored remedy sua sponte.
Accordingly, I concur in part as to the majority’s conclusion regarding the violation of Ms. Bergman’s Sixth Amendment right to counsel and respectfully dissent in part as to the majority’s choice of a disfavored remedy to redress that constitutional violation. As was the case in Collins, “[bjecause evidence could have been introduced and arguments made that likely could have affected the outcome of [Ms. Bergman’s] competency hearings, it is impossible to say that the violation of [her] Sixth Amendment rights did not pervade [her] entire trial.” Id. at 1268. I would remand this matter to the district court, directing it to vacate Ms. Bergman’s convictions and to proceed with a new trial, provided that she is currently competent to participate in one. If there is some question as to Ms. Bergman’s present competency, I would direct the district court to order a psychological evaluation of Ms. Bergman’s current mental state and conduct a new competency hearing, at which she should be represented by counsel. For the foregoing reasons, therefore, I respectfully write separately.

. At that time, Ms. Bergman was represented by Edward PIuss of the Federal Public Defender’s Office. The district court's docket sheet reflects that she was represented before the district court by seven attorneys at various times. Her representation by Howard O. Kieffer, whom Ms. Bergman retained, is at issue in this appeal.

. Defense counsel also acknowledged that Ms. Bergman had made several requests that she be allowed to represent herself, but sug *1153 gested that the district court should first determine her competency. Defense counsel contemporaneously filed a Motion to Withdraw as Attorney and Motion to Allow Defendant to Proceed Pro Se Or in the Alternative for Appointment of CJA Counsel. The district court agreed that it first needed to determine whether Ms. Bergman was competent, since the question of whether she may waive counsel would require the court to determine, inter alia, that she was competent to do so.

. Section 4241 (d) provides:
If, after the hearing, the court finds by a preponderance of the evidence that the defendant is presently suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense, the court shall commit the defendant to the custody of the Attorney General. The Attorney General shall hospitalize the defendant for treatment in a suitable facility—
(1) for such a reasonable period of time, not to exceed four months, as is necessary to determine whether there is a substantial probability that in the foreseeable future he will attain the capacity to permit the proceedings to go forward; and
(2) for an additional reasonable period of time until—
(A) his mental condition is so improved that trial may proceed, if the court finds that there is a substantial probability that within such additional period of time he will attain the capacity to permit the proceedings to go forward; or
(B) the pending charges against him are disposed of according to law; whichever is earlier.
If, at the end of the time period specified, it is determined that the defendant's mental condition has not so improved as to permit proceedings to go forward, the defendant is subject to the provisions of sections 4246 and 4248.
18 U.S.C. § 4241(d).

. Mr. Kieffer later was convicted on charges of mail fraud and making a false statement stemming from his false petition for admission to the Bar of the United States District Court for the District of North Dakota. See United States v. Kieffer, No. 1:08-CR-54, 2009 WL 1783553 (D.N.D. June 23, 2009). In that case, the court found that Mr. Kieffer fraudulently had gained admission to the bar by representing falsely that he had a law degree from Antioch School of Law in Washington, D.C. and that he was properly admitted to practice law before the Central District of California and the Ninth Circuit Court of Appeals. Id. at *1, 3. In reality, Mr. Kieffer did not graduate from college or attend law school. Id. at *3. The North Dakota district court described Mr. Kieffer’s fraudulent representation in that case as follows:
The scheme was rather obvious: dupe a number of courts and lawyers into thinking the Defendant was a lawyer, solicit clients based upon his admission to several courts and representations that he was a lawyer, represent them, and collect fees for having done so. Several lawyers, court officials, and clients testified as to the Defendant’s conduct and representations. The quality of work performed is irrelevant, although described as good by one Government witness. The Defendant could never have secured admittance to the bar if he had been truthful and he could not have secured any clients if he had not fraudulently held himself out as an attorney.
The intent to defraud was plain and may be rightly inferred from the Defendant’s repeated false statements. He collected money for his legal services despite having no formal legal training and while holding himself out as an attorney.
Id. at *2. The American Bar Association ("ABA”) reported that Mr. Kieffer had been admitted to practice pro hac vice in almost twenty federal cases across the country. ABA Law Journal, Catch Me If Yon Can, (April 2009), available at http://www.abajournal. com/magazine/catch_me_iLyou_can/(last visited Mar. 22, 2010). The ABA also reported that Mr. Kieffer previously had been convicted of multiple felonies. Id.

. Thai same day, Ms. Bergman voluntarily withdrew her appeal from the district court’s order finding her incompetent. Her appellate attorney (not Mr. Kieffer) stated that she wished to withdraw the appeal and he believed that Ms. Bergman's decision was made voluntarily, knowingly, and intelligently. In an attached declaration, Ms. Bergman stated that she had been "fully advised by [her] attorneys" in her decision. We granted her motion for voluntary dismissal and terminated the appeal.

. At the December 21, 2007 guilty plea hearing, Ms. Bergman repeatedly insisted that she had hired someone to protect her son from her ex-husband, but did not intend for her ex-husband to be killed. The district court concluded that it could not accept the plea because Ms. Bergman did not admit to murder-for-hire or conspiracy to commit murder-for-hire.

. Mr. Hurst did not enter a formal appearance until June 13, 2008.

. The district court entered an Amended Verdict on October 20, 2008. The original verdict referred only to the Indictment and not to the Superceding Indictment.

. Ms. Bergman filed a pro se motion to vacate her convictions on the basis of ineffective assistance of counsel, but that motion was stricken by the court because she was represented by counsel, the same fate met by all of her pro se motions before both the district court and this court.

. I do, however, predicate my joinder in the majority's conclusions as to the Sixth Amendment violation on the understanding that the majority has reached those conclusions pursuant to Cronic.

. In adopting that rule, the majority relies upon the Second Circuit’s holding in Solina v. United States, 709 F.2d 160, 167 (2d Cir. 1983), which preceded both Cronic and Strickland. However, as the Second Circuit later made clear, Solina and its progeny are consistent with Cronic rather than Strickland because ”[w]hen the accused has been deprived of representation by counsel, he is entitled to relief without proving that he was prejudiced by the deprivation.” United States v. Novak, 903 F.2d 883, 886 (2d Cir.1990).

. The types of disfavored injunctions include: “(1) preliminary injunctions that alter the status quo; (2) mandatory preliminary injunctions; and (3) preliminary injunctions that afford the movant all the relief that it could recover at the conclusion of a full trial on the merits.” O Centro Espirita Beneficiente Uniao Do Vegetal, 389 F.3d at 975. These injunctions are considered disfavored for various reasons.

. 18 U.S.C. § 4241(e) reads as follows:
When the director of the facility in which a defendant is hospitalized pursuant to subsection (d) determines that the defendant has recovered to such an extent that he is able to understand the nature and consequences of the proceedings against him and to assist properly in his defense, he shall promptly file a certificate to that effect with the clerk of the court that ordered the commitment. The clerk shall send a copy of the certificate to the defendant's counsel and to *1164 the attorney for the Government. The court shall hold a hearing, conducted pursuant to the provisions of section 4247(d), to determine the competency of the defendant. If, after the hearing, the court finds by a preponderance of the evidence that the defendant has recovered to such an extent that he is able to understand the nature and consequences of the proceedings against him and to assist properly in his defense, the court shall order his immediate discharge from the facility in which he is hospitalized and shall set the date for trial or other proceedings. Upon discharge, the defendant is subject to the provisions of chapters 207 and 227.
18 U.S.C. § 4241(e).