FILED
United States Court of Appeals
Tenth Circuit

March 25, 2010

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

      Plaintiff - Appellee,

v.

GWEN BERGMAN,

      Defendant - Appellant.

No. 08-1472

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
(D.C. NO. 1:04-CR-00180-WDM-1)**

---

Alleen VanBebber, of McDowell, Rice, Smith & Buchanan, P.C., Kansas City, Missouri, for Defendant-Appellant.

John Hutchins, Assistant United States Attorney (David M. Gaouette, Acting United States Attorney, David M. Conner, Assistant United States Attorney, and Gregory Holloway, Assistant United States Attorney, with him on the brief), Denver, Colorado, for Plaintiff-Appellee.

---

Before **HOLMES**, **BALDOCK**, and **SILER**,[*] Circuit Judges.

---

**SILER**, Circuit Judge.

---

[*] The Honorable Eugene E. Siler, Jr., Senior United States Circuit Judge for the Sixth Circuit, sitting by designation.

Gwen Bergman has had a long and complicated history before this court and the District of Colorado. Upon remand after she successfully appealed her original conviction based on a plea agreement, the district court found her incompetent to stand trial. She then retained Howard O. Kieffer who had never been a licensed attorney. He represented Bergman when the court declared that she was competent and during her bench trial, after which she was convicted of solicitation to commit murder and criminal conspiracy, in violation of 18 U.S.C. §§ 1958(a) and (b) and 2. Before she was sentenced, the court discovered Kieffer's fraud. It ultimately appointed new counsel and sentenced her to 108 months' imprisonment. She appeals her conviction and sentence. Because Bergman was not represented by counsel when the court declared her competent, we **REMAND** for the district court to consider whether it can make a retrospective competency determination.

## I. Background

In April 2004, Bergman pleaded guilty to a two-count information alleging the following: (1) a violation of the Travel Act, 18 U.S.C. § 1952(a)(1) and (3); and (2) criminal forfeiture pursuant to 18 U.S.C. §§ 982, 1956(c)(7), 1961(1), and 28 U.S.C. § 2461(c). *United States v. Bergman*, 191 F. App'x 762, 763 (10th Cir. 2006). The underlying allegations arose out of Bergman's payment of $30,000 to an undercover law enforcement agent posing as a "hit man" to murder her ex-

husband. *Id.* Despite early reservations, the district court accepted her plea and sentenced her to sixty months' imprisonment and three years' supervised release.

Bergman appealed her conviction and sentence, arguing that she had not admitted facts sufficient to establish a violation of 18 U.S.C. § 1952(a)(1) and (3). Three days before the scheduled oral argument before us on that appeal, the government admitted it erred and that her plea did not satisfy the elements of the violation. *Id.* We vacated her conviction and remanded to the district court. *Id.* at 763-64. On the same day we issued our mandate remanding the case, a grand jury indicted Bergman on new charges—use of interstate commerce facilities and mail in commission of a murder for hire, in violation of 18 U.S.C. § 1952(a) and (b) (Count 1); conspiracy to commit murder for hire, in violation of 18 U.S.C. § 1958(a) and (b) (Count 2); and criminal forfeiture, 18 U.S.C. § 982(a)(1) (Count 3). In October 2006, Bergman's counsel, Assistant Federal Public Defender Edward Pluss, filed a motion to determine her competency to stand trial, despite her adamance that she was competent. He also moved for appointment of a Criminal Justice Act ("CJA") attorney to represent her during the competency hearing. The court granted both motions and appointed CJA attorney Martha Eskesen to represent her as "special counsel" for the competency hearing.

At the competency hearing in February 2007, the court determined that Bergman was incompetent to stand trial and remanded her to the custody of the Attorney General to be hospitalized for treatment. Bergman then filed a pro se

notice of appeal. While her appeal was pending, the government filed a motion to authorize involuntary administration of psychotropic medication. Before a hearing on that motion was held, Kieffer entered his appearance on Bergman's behalf, and Pluss withdrew. Kieffer appeared telephonically at the hearing regarding forced medication. The court indicated it had received a report from the Bureau of Prisons ("BOP") opining that Bergman was competent to proceed, but suggested it did not have jurisdiction to continue due to Bergman's pending appeal. Kieffer stated that the appeal was moot and that it would be voluntarily dismissed, given the BOP's report. After a break, the government informed the court that it was ready to proceed with a competency hearing and requested that the court take judicial notice of the BOP's report. Kieffer agreed with the government's request for judicial notice. Based solely on that report, which is not in the Record, the court found Bergman competent to stand trial. The government then withdrew its motion for forced medication.

In December 2007, the government filed a superceding indictment, charging three counts based on the same facts, under 18 U.S.C. §§ 981(a)(1)(C), 1958(a) and (b), 1956(c)(7), 1961(1),and 2, and 28 U.S.C. § 2461(c). After a bench trial in May 2008, during which Kieffer represented Bergman with E.J. Hurst, II, as co-counsel, she was convicted on Counts 1 and 2. In June 2008, after allegations against Kieffer began to surface, Hurst entered his appearance as counsel for Bergman. Finally, the court became aware of the fact that Kieffer was

not a licensed attorney and that he was not authorized to practice before the court in July 2008.[1] The court stated that it was considering ordering a mistrial and vacating the verdict, and ordered the parties to comment on the issue. Hurst responded to this request, but never requested that the court grant a mistrial, and thereafter moved to withdraw as counsel. In September 2008, the court granted Hurst's motion and reappointed Eskesen to represent Bergman.

Eskesen never filed a motion for new trial. However, she did file an amended motion seeking a sentencing hearing and requesting a correction of the record to reflect that an earlier motion to dismiss the forfeiture count was not filed pro se and should not have been stricken. The court granted that motion, scheduled a sentencing hearing, and reinstated the motion to dismiss the forfeiture

---

[1] Since Bergman's trial, Kieffer has been convicted for fraudulently gaining admission to the bar of the District of North Dakota by falsely claiming that he was a member of the bar of another federal court. *See United States v. Kieffer*, No. 08-cr-54, 2009 WL 1783553, at *2-3 (D.N.D. June 23, 2009) ("This was not a close case. The evidentiary basis was quite sufficient and the verdict was predictable."). Not only was Kieffer never properly admitted to any bar, he also never took the bar exam, never graduated from law school, and never graduated from college. *Id.* at *3.

Kieffer's fraud was quite extensive. In 1993, he was sentenced to five years' imprisonment and five years' supervised release for filing false income tax returns. *United States v. Kieffer*, No. 08-cr-54, 2009 WL 973350, at *1 (D.N.D. Apr. 10, 2009). While in prison, he represented himself pro se in various habeas corpus petitions. *See Kieffer v. United States*, 995 F.2d 231 (9th Cir. 1993) (table). After he was released, he began giving legal advice regarding federal sentences in the BOP and even spoke at conferences sponsored by the U.S. Administrative Office of the Courts and the National Association of Criminal Defense Lawyers. *See, e.g.*, Felisa Cardona, *U.S. Attorney to Probe "Attorney,"* The Denver Post, July 6, 2008, at B2. In all, he represented at least sixteen clients in ten federal courts across the country. *Id.*

count. It later dismissed the forfeiture account and accordingly amended the verdict. Bergman was sentenced in December 2008 to 108 months' imprisonment for each count, to be served concurrently, and three years' supervised release.

Bergman timely appeals her conviction and sentence, with the aid of counsel appointed under the CJA. She argues that her conviction should be overturned because she was denied her Sixth Amendment right to counsel in determining her competency to stand trial and at trial, and that her sentence is unreasonable.

## II. DISCUSSION

### A. Sixth Amendment Right to Counsel

Bergman first argues that Kieffer's representation of her at the October 2007 hearing, at which the district court determined she was competent to stand trial, violated her Sixth Amendment right to counsel.

"The Sixth Amendment entitles a defendant to the assistance of counsel at every critical stage of a criminal prosecution." *United States v. Collins*, 430 F.3d 1260, 1264 (10th Cir. 2005) (citing *Kirby v. Illinois*, 406 U.S. 682, 690 (1972)). A critical stage is one that holds "significant consequences" for the defendant. *Id.* "[A] defendant is entitled to counsel at any proceeding where an attorney's assistance may avoid the substantial prejudice that could otherwise result from the proceeding." *Id.* A competency hearing is a critical stage at which a defendant is entitled to counsel. *Id.* Although it appears from the record that the October

-6-

2007 hearing was not a full competency hearing, the court declared Bergman competent at that hearing.  Additionally, the government does not contend that this was not a "critical stage" in the proceedings, such that Bergman was not entitled to counsel.  Accordingly, the October 2007 hearing was a "critical stage" at which Bergman's right to counsel applied.  Thus, we must determine whether Bergman's Sixth Amendment rights were violated because she was represented by phoney counsel.  Bergman argues that we should adopt a per se rule of ineffectiveness applicable where a defendant's counsel has not been admitted to any bar; the government urges us to apply the standard for ineffective assistance of counsel established in *Strickland v. Washington*, 466 U.S. 668 (1984).

This is a case of first impression in our circuit.  In *United States v. Stevens*, 978 F.2d 565 (10th Cir. 1992), we rejected a per se ineffectiveness rule and applied the *Strickland* standard in a case where a criminal defendant was represented by an attorney whose bar membership was unknowingly revoked before his trial.  *Id.* at 566-68.  Relying on cases from our sister circuits, we concluded that "where . . . a licensed attorney is disbarred without notice, the attorney's representation is not per se ineffective." *Id.* at 568 (citing *United States v. Hoffman*, 733 F.2d 596 (9th Cir.), *cert. denied*, 469 U.S. 1039 (1984); *Waterhouse v. Rodriguez*, 848 F.2d 375 (2d Cir. 1988)).  In doing so, we recognized that in *Waterhouse*, the Second Circuit distinguished its earlier case, *Solina v. United States*, 709 F.2d 160 (2d Cir. 1983), "which established a per se

ineffectiveness rule where the defective counsel had never been admitted to practice in any state." *Stevens*, 978 F.2d at 567-68 (citing *Waterhouse*, 848 F.2d at 368).

Here, however, we are not simply faced with an attorney who had satisfied the substantive requirements and was later disbarred or whose admission to the bar was improper based on a technicality. Instead, we are faced with a situation where a criminal defendant was represented by a man claiming to have been successfully admitted to the bar, but who never attended law school or even graduated from college. The Second Circuit adopted a per se rule of ineffectiveness under similar facts in *Solina*, in which a convicted felon petitioned for habeas corpus, alleging that his Sixth Amendment right to counsel was violated because his attorney never passed a bar exam. 709 F.2d at 161. The court reasoned that "counsel," as used by "Congress in giving effect to the Sixth Amendment" meant, at the very least, "representation by a licensed practitioner." *Id.* at 167. It explained that technical defects would not require the same per se rule. *Id.* ("We limit our decision in this case to situations where, unbeknown to the defendant, his representative was not authorized to practice law in any state, and the lack of such authorization stemmed from failure to seek it or from its denial for a reason going to legal ability, such as failure to pass a bar examination, or want of moral character."). At least one other circuit has similarly adopted a per se ineffectiveness rule, applicable only where defendant's

-8-

attorney was never properly admitted to any bar. *See, e.g.*, *United States v. Mitchell*, 216 F.3d 1126, 1132 (D.C. Cir. 2000). Although other circuits have discussed *Solina*, they have not applied it, because the cases before them were factually distinguishable from *Solina*. *See, e.g.*, *United States v. Watson*, 479 F.3d 607, 610 (8th Cir. 2007) (explaining that *Solina's* per se rule was narrow and not applicable to a case in which the attorney was a trained and qualified attorney, but with technical licensing problems); *Familia-Consoro v. United States*, 160 F.3d 761, 766 (1st Cir. 1998) (citing *Solina*, but declining to apply its per se rule where a third party paid for defendant's attorney); *Sexton v. United States*, 65 F.3d 169 (6th Cir. 1995) (table) (declining to apply *Solina* where defendant had a trial team of six attorneys, and only one was not licensed); *Bond v. United States*, 1 F.3d 631, 637 (7th Cir. 1993) (concluding that the facts before it did not reach the level of those in *Solina*).

We agree with the reasoning of the Second Circuit and adopt a *narrow* per se rule of ineffectiveness where a defendant is, unbeknownst to him, represented by someone who has not been admitted to any bar based on his "failure to ever meet the substantive requirements for the practice of law." *Id.* at 167. Thus, Bergman was denied counsel at the October 2007 hearing, in violation of her Sixth Amendment right, regardless of her ability to prove prejudice.

Having concluded that her right to counsel was violated, we must determine the proper remedy. Although Bergman asks us to reverse her conviction, "[a]

Sixth Amendment violation requires automatic reversal only when the constitutional violation pervades the entire criminal proceeding." *Collins*, 430 F.3d at 1266. Deprivation of the right to counsel at a competency hearing affects the entire proceeding only if the defendant stands trial while incompetent. *Id.* at 1267. Thus, we must determine whether Bergman's Sixth Amendment violation resulted in the district court erroneously concluding that she was competent to stand trial. *Id.*

Although generally disfavored, *id.* (citing *Drope v. Missouri*, 420 U.S. 162, 183 (1975)), retrospective competency hearings are not forbidden. To determine whether retrospective competency hearings are permissible, courts should consider the following factors:

> (1) the passage of time, (2) the availability of contemporaneous medical evidence, including medical records and prior competency determinations, (3) any statements by the defendant in the trial record, and (4) the availability of individuals and trial witnesses, both experts and non-experts, who were in a position to interact with defendant before and during trial.

*Id.* (quoting *McGregor v. Gibson*, 248 F.3d 946, 962-63 (10th Cir. 2001) (en banc)). In order to determine whether the Sixth Amendment violation here contaminated the remainder of Bergman's criminal proceeding, we remand this case to the district court for an evidentiary hearing to determine whether it can make a retrospective competency determination.[2] It should explore the factors

[2]The dissent disagrees with our decision to remand to the district court for
(continued...)

listed above, and determine whether it is capable of determining whether

Bergman was competent to stand trial in October 2007.  If it is not able to make a

retrospective competency determination, or if the court determines it can make a

retrospective competency determination and it concludes that Bergman was

incompetent, it must vacate the judgment, hold a hearing to determine Bergman's

current competency status—at which she must be represented by counsel—and

proceed to trial when she is competent.  On the other hand, if it concludes that

---

[2](...continued)
its consideration of whether a retrospective competency determination can be made, because "the government did not request that remedy and made no affirmative showing that a retrospective competency determination was warranted."  Although the government did not address the appropriate remedy in its brief—because it argued there was no underlying violation—it did address the issue at oral argument.  When asked about the appropriate remedy, the government stated that it would be appropriate to remand for a retrospective competency determination, and that the district court could receive additional evidence, including the missing medical report, as well as hear testimony from the psychologists and/or psychiatrists that treated Bergman previously in determining whether Bergman was competent to stand trial.  Thus, we are not choosing *sua sponte* to apply this remedy.

In addition, the dissent concludes that "the government bears a heightened burden to demonstrate that a particular case falls within the 'limited circumstances' under which a retrospective competency determination is warranted."  However, none of our prior cases considering whether a retrospective competency determination is appropriate have mentioned that the government bears such a heightened burden.  *See Collins*, 430 F.3d at 1267 (noting that we have permitted retrospective competency determinations only in limited circumstances, but not mentioning any heightened burden); *McGregor*, 248 F.3d at 962-63 (same); *Clayton v. Gibson*, 199 F.3d 1162, 1169 (10th Cir. 1999) (explaining that such competency hearings are disfavored, but "are permissible whenever a court can conduct a meaningful hearing to evaluate retrospectively the competency of the defendant" (internal quotation marks and citation omitted)).  Accordingly, we see no reason to establish a heightened burden here.

-11-

Bergman was competent in October 2007, the court may still, in its discretion, vacate Bergman's conviction and conduct a new trial.

Although Bergman alternatively argues she was denied effective assistance of counsel at trial, we decline to reach that claim. Generally, "[i]neffective assistance of counsel claims should be brought in collateral proceedings, not on direct appeal." *United States v. Galloway*, 56 F.3d 1239, 1240 (10th Cir. 1995). As we explained in *Beaulieu v. United States*, 930 F.2d 805 (10th Cir. 1991), *overruled on other grounds by Galloway*, 56 F.3d at 1241, ineffective assistance of counsel claims are more appropriate for collateral attack under 28 U.S.C. § 2255 than direct appeal, because the factual record for such claims is more developed when the district court conducts an evidentiary hearing on the issue. *Beaulieu*, 930 F.2d at 807; *see also Galloway*, 56 F.3d at 1240. Although we will, on rare occasion, consider such a claim on direct appeal, we do so only where no further development of the claim is needed prior to our review. *Galloway*, 56 F.3d at 1240. We will not remand a case for further development of the record during the direct appeal of a case. *Id.* at 1241; *see also United States v. Mejia-Alarcon*, 995 F.3d 982, 992 (10th Cir. 1993) ("As a general matter, however, this Circuit does not stay proceedings on direct appeal to permit the district court time to make factual findings on ineffective assistance of counsel claims . . . .").

Further development of the record is required before we address Bergman's ineffective assistance of counsel claim. For example, additional information

-12-

regarding the extent of Hurst's representation of Bergman would assist us in determining whether to apply the ineffective assistance of counsel standard set forth in *Strickland* or the constructive denial of counsel standard in *United States v. Cronic*, 466 U.S. 648, 659 (1984) (recognizing that a defendant may be denied counsel, despite actually having counsel, "if counsel entirely fails to subject the prosecution's case to meaningful adversarial testing"). Although the Record demonstrates that Hurst only spoke four times during trial, we do not know the extent of his activities outside the courtroom. This additional evidentiary information would aid the court in determining which standard to apply and whether Bergman's claim should prevail, and so we decline to address her claim for ineffective assistance of trial counsel. If the district court does not vacate her conviction on remand, she may pursue this claim through a collateral proceeding if she so chooses.

**B. Sentencing**

If the district court decides not to vacate Bergman's conviction and conduct a new trial, we affirm her sentence of 108 months. We review sentencing challenges for reasonableness, which, in the sentencing context, is an abuse-of-discretion standard. *See Gall v. United States*, 552 U.S. 38, 46 (2007) ("Our explanation of 'reasonableness' review . . . made it pellucidly clear that the familiar abuse-of-discretion standard of review now applies to appellate review of sentencing decisions."); *Rita v. United States*, 551 U.S. 338, 351 (2007)

("[A]ppellate 'reasonableness' review merely asks whether the trial court abused its discretion.").  We begin by noting that to the extent Bergman is attempting to seek appellate review of the district court's denial of her request for a downward departure under Chapter Five of the Guidelines, we lack "jurisdiction . . . to review a district court's discretionary decision to deny a motion for downward departure on the ground that a defendant's circumstances do not warrant the departure."  *United States v. Sierra-Castillo*, 405 F.3d 932, 936 (10th Cir. 2005).  "[We] may review a denial of a downward departure only if the denial is based on the sentencing court's interpretation of the Guidelines as depriving it of the legal authority to grant the departure."  *United States v. Fonseca*, 473 F.3d 1109, 1112 (10th Cir. 2007) (emphasis added).  Bergman never argued that the district court concluded it did not have the authority to grant the departure, and our review of the record indicates that it acknowledged it did have such authority.  Accordingly, we lack jurisdiction to review the district court's denial of Bergman's request for downward departure.  Nonetheless, we may consider her departure arguments in considering the overall reasonableness of her sentence.  *United States v. Chavez-Diaz*, 444 F.3d 1223, 1228 (10th Cir. 2006).

"Reasonableness review is a two-step process comprising a procedural and a substantive component."  *United States v. Verdin-Garcia*, 516 F.3d 884, 895 (10th Cir. 2008) (citing *Gall*, 128 S. Ct. at 597).  Procedural review requires us to consider whether the district court committed any "significant procedural error,

-14-

such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the [18 U.S.C.] § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence." *Gall*, 128 S. Ct. at 597. Comparatively, substantive review "involves whether the length of the sentence is reasonable given all the circumstances of the case in light of the factors set forth in [] § 3553(a)." *United States v. Conlan*, 500 F.3d 1167, 1169 (10th Cir. 2007).

Because Bergman does not argue that the district court incorrectly calculated her Guidelines range of 121 to 151 months, we presume she is challenging the substantive reasonableness of the sentence, rather than its procedural reasonableness. Under the abuse-of-discretion standard, we "must now afford substantial deference to district courts." *United States v. Smart*, 518 F.3d 800, 806 (10th Cir. 2008). We may reverse Bergman's sentence only if the district court's sentencing decision was "arbitrary, capricious, whimsical, or manifestly unreasonable." *United States v. Munoz-Nava*, 524 F.3d 1136, 1146 (10th Cir. 2008) (quotation omitted). She argues that her sentence was unreasonable, given her mental condition, Kieffer's fraudulent representation, and the fact that she may not have been competent to stand trial. She points to the fact that she was sentenced to only sixty months after her plea to the information, compared to 108 months under the superceding indictment, as evidence of the unreasonableness of her sentence.

-15-

Bergman's 108-month sentence, which fell below the advisory Guidelines range, was reasonable. First, Bergman's arguments regarding her competency to stand trial have already been addressed and were not relevant at sentencing. Second, the district court did consider Bergman's mental health in formulating her sentence. Although the court denied her request for downward departure based on her mental status, it stated that "her mental-health condition is a consideration to be made in [its] ultimate decision under the sentencing factors." In fact, the district court granted a downward variance from the Guidelines range of 121 to 151 months to a sentence of 108 months.

Finally, although Bergman was sentenced twice as long for her conviction under the superceding indictment than she was when she pled guilty under the information, her sentence was not unreasonable. She was convicted of the crimes charged under the superceding indictment, and the penalties for those crimes were more substantial than those charged under the information. Thus, it was not unreasonable to impose a greater sentence for her conviction under the superceding indictment. Overall, the sentencing transcript indicates that the district court carefully considered and applied the § 3553(a) factors. It balanced its concerns about the seriousness of the crime, the need for deterrence and public protection, and the defendant's mental state in formulating its sentence. Its decision not to lower further Bergman's sentence based on Kieffer's

representation does not render abuse of discretion.  Bergman has not rebutted the presumption that her sentence of 108 months was reasonable.

## III.  CONCLUSION

We REMAND this case to the district court for further proceedings consistent with this opinion.

08-1472, *United States v. Bergman*

**HOLMES,** Circuit Judge, concurring in part and dissenting in part.

I write separately because I disagree with the majority's use of a disfavored remedy to redress the constitutional violation in this case. Although I endorse the majority's conclusion that Ms. Bergman's Sixth Amendment right to counsel was violated when the district court found her to be restored to competency while she was represented by someone who was not an attorney, I cannot agree with the majority's chosen remedy for this violation. I believe that it is inappropriate to remand this matter to the district court for an evidentiary hearing to determine whether it is possible to make a retrospective competency determination. It is inappropriate to do so because the government has not affirmatively demonstrated that such a *nunc pro tunc* determination of the state of Ms. Bergman's competency on October 23, 2007 is warranted. Absent such a showing, we should not choose *sua sponte* to apply this remedy, which we previously have permitted "only in limited circumstances," *United States v. Collins*, 430 F.3d 1260, 1267 (10th Cir. 2005), because there is nothing in the record to suggest that the facts of this case justify the application of this disfavored remedy. Retrospective competency determinations are inherently difficult to conduct in a meaningful manner and that difficulty is exacerbated in this case due to the paucity of the record before us. Consequently, I would remand this matter to the district court, directing it to vacate Ms. Bergman's convictions and to proceed with a new trial,

provided that she currently is competent to participate in one. As a result, I would not reach Ms. Bergman's other arguments on appeal, most notably her sentencing arguments.

## I. Background

In order to fully understand the constitutional violation in this case and appropriateness *vel non* of the majority's chosen remedy, a recitation of the somewhat unusual facts is necessary. Defendant-Appellant Gwen Bergman originally pleaded guilty to a two-count information alleging a violation of the Travel Act, 18 U.S.C. § 1952(a)(1) and (3), and seeking a forfeiture of the property derived from that violation pursuant to 18 U.S.C. §§ 982, 1956(c)(7), and 1961(1), and 28 U.S.C. § 2461(c). *United States v. Bergman*, 191 F. App'x 762, 763 (10th Cir. 2006). These charges arose from "Ms. Bergman's payment of $30,000 to an undercover law enforcement agent (posing as a 'hit man') to murder her ex-husband." *Id.* She was sentenced to five years' imprisonment followed by three years of supervised release. *Id.* She appealed her conviction and sentence to this court. *Id.* Before oral argument could be held in that appeal, however, "the government confessed error" and admitted that the facts in the plea agreement did not satisfy the elements of the Travel Act violation. *Id.* We "agree[d] with the government's . . . position" and vacated the plea agreement and Ms. Bergman's convictions and remanded the case to the district court. *Id.*

2

The mandate from that appeal issued on September 13, 2006. That same day, Ms. Bergman was charged by a second indictment with two counts of violating 18 U.S.C. § 1958 (murder-for-hire and conspiracy to commit murder-for-hire) and with forfeiture. Defense counsel from the Federal Public Defender's Office[3] thereafter filed a Motion to Determine Competency of Defendant, over Ms. Bergman's objection. Because counsel had "reasonable cause to believe the Defendant may presently be suffering from mental disease o[r] defect rendering her mentally incompetent," R., Vol. I, Doc. 121, at 1-2 (Mot. to Determine Competency of Defendant, filed Oct. 18, 2006), he requested that the district court order a competency hearing pursuant to 18 U.S.C. § 4241.[4] Section 4241 provides in relevant part:

> At any time after the commencement of a prosecution for an offense and prior to the sentencing of the defendant . . . the defendant or the attorney for the Government may file a motion for a hearing to determine the mental competency of

---

[3]  At that time, Ms. Bergman was represented by Edward Pluss of the Federal Public Defender's Office. The district court's docket sheet reflects that she was represented before the district court by seven attorneys at various times. Her representation by Howard O. Kieffer, whom Ms. Bergman retained, is at issue in this appeal.

[4]  Defense counsel also acknowledged that Ms. Bergman had made several requests that she be allowed to represent herself, but suggested that the district court should first determine her competency. Defense counsel contemporaneously filed a Motion to Withdraw as Attorney and Motion to Allow Defendant to Proceed *Pro Se* Or in the Alternative for Appointment of CJA Counsel. The district court agreed that it first needed to determine whether Ms. Bergman was competent, since the question of whether she may waive counsel would require the court to determine, *inter alia*, that she was competent to do so.

3

> the defendant. The court shall grant the motion, or shall order such a hearing on its own motion, if there is reasonable cause to believe that the defendant may presently be suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense.

18 U.S.C. § 4241(a). Defense counsel also requested that a psychiatric or psychological examination of Ms. Bergman be conducted pursuant to 18 U.S.C.§ 4247(b) and (c), which govern the court's power to order such an examination and detail what findings and other information should be included in the resulting psychiatric report.

Due to the conflict between Ms. Bergman's expressed desire to represent herself and defense counsel's assertion that he had reasonable cause to believe that she was incompetent, the district court appointed an attorney, Martha Eskesen, as special counsel to represent Ms. Bergman's interests in connection with the competency motion. The court ordered a psychiatric or psychological examination of Ms. Bergman and scheduled a competency hearing.

Two psychiatrists evaluated Ms. Bergman and submitted separate reports to the district court. Dr. Susan Bograd and Dr. Karen Fukutaki both opined that Ms. Bergman was suffering from a mental disease or defect that rendered her incapable of understanding the nature and course of the proceedings against her, of participating or assisting in her defense, or of cooperating with defense counsel.

4

The February 22, 2007 competency hearing was held pursuant to 18 U.S.C. §§ 4241(c) and 4247(d), which provide that the defendant "shall be represented by counsel" and "shall be afforded an opportunity to testify, to present evidence, to subpoena witnesses on his behalf, and to confront and cross-examine witnesses who appear at the hearing." 18 U.S.C. § 4247(d); *see also* 18 U.S.C. § 4241(c) (providing that "[t]he [competency] hearing shall be conducted pursuant to the provisions of section 4247(d)"). Defense counsel and Special Counsel Eskesen both were present at the hearing, as was Ms. Bergman. The government called both evaluating doctors to testify. Dr. Fukutaki testified that she questioned Ms. Bergman's understanding of a plea bargain, which was "very limited," and that the "major problems" with her competency arose from Ms. Bergman's perception of the seriousness of the evidence against her, which "did not appear to be rational." R., Vol. VIII, Tr. at 10-11, 23 (Competency Hearing, dated Feb. 22, 2007). Dr. Fukutaki testified that Ms. Bergman appeared to have "fixed delusion[s]" as a result of a mental disease or defect that would render her unable to assist in her own defense. *Id*. at 13-14, 27, 36. Although Dr. Fukutaki did not definitively diagnose Ms. Bergman with a particular psychological disorder, she opined that Ms. Bergman could be suffering from a range of disorders, including post-traumatic stress disorder, delusional disorder, a personality disorder, or a combination of those.

5

Dr. Bograd testified that she believed Ms. Bergman would have "some substantial difficulty" assisting in her own defense as a result of a mental disease or defect. *Id*. at 41-43. Although Dr. Bograd believed it was possible that Ms. Bergman suffered from a personality disorder, she definitively diagnosed Ms. Bergman as having a delusional disorder of the persecutory type that left her "not able to face the reality of the charges against her." *Id*. at 42-44. Dr. Bograd testified that Ms. Bergman's inability to appreciate the nature of the charges against her was "of psychotic proportions. . . . And I think that that makes it where she is unable to effectively assist an attorney to defend her against those charges." *Id*. at 44; *see also id*. at 50. Dr. Bograd opined that she did not think Ms. Bergman would agree with the diagnosis that she suffers from a mental disease or defect because Ms. Bergman believed that she was fine. Both doctors opined that Ms. Bergman's ability to assist in her own defense would not be restored were she to be given a different attorney. At the hearing, defense counsel and Special Counsel Eskesen each had the opportunity to cross-examine the doctors and were able to question their conclusions and to determine what methods and evidence that the doctors used to reach their assessments. The district court also asked its own questions of each witness.

After a brief recess, the competency hearing resumed and Ms. Bergman took the stand. Ms. Bergman testified as to her disagreement with the doctors' reports, her wish to be represented by Ms. Eskesen rather than current defense

6

counsel, and her understanding of the proceedings against her. She then briefly

was cross-examined by the government. Finally, each attorney was allowed to

present arguments to the court on the issue of competency.

At the conclusion of the competency hearing, the district court found by a

preponderance of the evidence that Ms. Bergman was incompetent under 18

U.S.C. § 4241(d).[5] In accordance with that section, the court remanded her to the

---

[5]    Section 4241(d) provides:

If, after the hearing, the court finds by a preponderance of the evidence that the defendant is presently suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense, the court shall commit the defendant to the custody of the Attorney General. The Attorney General shall hospitalize the defendant for treatment in a suitable facility—

(1) for such a reasonable period of time, not to exceed four months, as is necessary to determine whether there is a substantial probability that in the foreseeable future he will attain the capacity to permit the proceedings to go forward; and

(2) for an additional reasonable period of time until—

(A) his mental condition is so improved that trial may proceed, if the court finds that there is a substantial probability that within such additional period of time he will attain the capacity to permit the proceedings to go forward; or

(B) the pending charges against him are disposed of according to law;

(continued...)

7

custody of the Attorney General for hospitalization for a reasonable period not to exceed four months. Ms. Bergman filed a notice of appeal from that order.

The government filed a motion with the district court on July 31, 2007, asking the court to authorize the involuntary administration of psychotropic medication to Ms. Bergman in an effort to restore her to competency. The government relayed to the court that BOP clinical staff had evaluated Ms. Bergman and concluded that she still suffered from a mental disease or defect which rendered her incompetent, but also had concluded that "there is a substantial probability that in the foreseeable future Ms. Bergman could obtain the capacity to allow trial to proceed should she receive appropriate treatment with psychotropic medication." R, Vol. I, Doc. 235, at 1-2 (Mot. to Authorize Involuntary Administration of Psychotropic Medication, filed July 31, 2007). Because Ms. Bergman had refused such treatment, the government sought an order allowing BOP clinical staff to medicate her involuntarily. Ms. Bergman, through counsel, objected to the motion, requested a hearing, and requested that

_____

(...continued)
whichever is earlier.

> If, at the end of the time period specified, it is determined that the defendant's mental condition has not so improved as to permit proceedings to go forward, the defendant is subject to the provisions of sections 4246 and 4248.

18 U.S.C. § 4241(d).

8

she be permitted to attend the hearing. The district court scheduled a hearing on that motion for October 23, 2007.

Howard O. Kieffer of Santa Ana, California, entered an appearance as retained defense counsel for Ms. Bergman on October 9, 2007. As a result, Ms. Bergman's public defender was permitted to withdraw. Mr. Kieffer would represent Ms. Bergman from October 9, 2007 until July 9, 2008, when it became apparent that he was not qualified to practice law. Indeed, he had never been to law school or graduated from college and was a convicted felon.[6]

---

[6] Mr. Kieffer later was convicted on charges of mail fraud and making a false statement stemming from his false petition for admission to the Bar of the United States District Court for the District of North Dakota. *See United States v. Kieffer*, No. 1:08-CR-54, 2009 WL 1783553 (D.N.D. June 23, 2009). In that case, the court found that Mr. Kieffer fraudulently had gained admission to the bar by representing falsely that he had a law degree from Antioch School of Law in Washington, D.C. and that he was properly admitted to practice law before the Central District of California and the Ninth Circuit Court of Appeals. *Id.* at *1, 3. In reality, Mr. Kieffer did not graduate from college or attend law school. *Id.* at *3. The North Dakota district court described Mr. Kieffer's fraudulent representation in that case as follows:

> The scheme was rather obvious: dupe a number of courts and lawyers into thinking the Defendant was a lawyer, solicit clients based upon his admission to several courts and representations that he was a lawyer, represent them, and collect fees for having done so. Several lawyers, court officials, and clients testified as to the Defendant's conduct and representations. The quality of work performed is irrelevant, although described as good by one Government witness. The Defendant could never have secured admittance to the bar if he had been truthful and he could not have secured any clients if he had not fraudulently held himself out as an attorney.

> The intent to defraud was plain and may be rightly inferred

(continued...)

9

The government thereafter filed a notice to withdraw its motion regarding involuntary medication because it learned, from discussions with BOP staff, that staff now believed that Ms. Bergman was "competent to proceed without forced medication." R., Vol. I., Doc. 250, at 2 (Government's Notice to Withdraw Previous Motion to Force Medicate Defendant, filed Oct. 16, 2007). The motion hearing nevertheless went forward as scheduled on October 23, 2007. Ms. Bergman was present, although Mr. Kieffer appeared only by telephone. There is no transcript from this hearing in the record before us, so what we know about the motion hearing we have learned from the three-page minute entry on the district court's docket sheet. It reveals that the district court "ha[d] received a report indicating the defendant would be competent to proceed with [sic] raises the issue of whether the Court has jurisdiction with a notice of appeal pending." R., Vol. I, Doc. 255, at 1 (Courtroom Minutes, Hearing Regarding Forced Medication, filed Oct. 23, 2007). The government apparently was concerned that a competency hearing could not be held during the pendency of a notice to appeal. *See id*. ("Mr.

---

[6](...continued)
> from the Defendant's repeated false statements. He collected money for his legal services despite having no formal legal training and while holding himself out as an attorney.

*Id*. at *2. The American Bar Association ("ABA") reported that Mr. Kieffer had been admitted to practice *pro hac vice* in almost twenty federal cases across the country. ABA Law Journal, *Catch Me If You Can,* (April 2009), *available at* http://www.abajournal.com/magazine/catch_me_if_you_can/ (last visited Mar. 22, 2010). The ABA also reported that Mr. Kieffer previously had been convicted of multiple felonies. *Id*.

10

Conner [government counsel] indicate[d] he [wa]s unaware of any case law that permits a competency hearing to proceed during the pendency of a notice of appeal.").  "Mr. Kieffer indicate[d] that in light of the Bureau of Prisons['] findings that the defendant [wa]s competent to proceed, the notice of appeal [wa]s now moot and he w[ould] be withdrawing the notice of appeal."[7]  *Id*. at 2.  There evidently was some "[d]iscussion regarding the need for a competency hearing or if the matter c[ould] be resolved if the Court adopt[ed] the findings in the report by the Bureau of Prisons."  *Id*.  The government requested and the court granted a brief recess "to decide whether the Court should enter findings based on the report by [the] Bureau of Prisons or whether he would want live testimony for purposes of the record."  *Id*.

After the recess, Mr. Kieffer tendered a copy of the voluntary dismissal of the Notice of Appeal to the court.  Then there was some "[d]iscussion on how the court should proceed."  *Id*.  The government "indicate[d] [it was] prepared to [sic] the competency hearing and request[ed] the Court take judicial notice to [sic] the report from [FMC] Carswell and for the Court to rule on the issue of competency."  *Id*.  The minute entry reflects that "Mr. Kieffer join[ed] Mr.

_____

[7]    That same day, Ms. Bergman voluntarily withdrew her appeal from the district court's order finding her incompetent.  Her appellate attorney (not Mr. Kieffer) stated that she wished to withdraw the appeal and he believed that Ms. Bergman's decision was made voluntarily, knowingly, and intelligently.  In an attached declaration, Ms. Bergman stated that she had been "fully advised by [her] attorneys" in her decision. We granted her motion for voluntary dismissal and terminated the appeal.

11

Conner's comments." *Id*. There is no indication from the minute entry (or the record at large) that the district court ever formally found by a preponderance of the evidence that Ms. Bergman had been restored to competency, but it is obvious from the court's subsequent actions that the court must have concluded that Ms. Bergman was now competent to stand trial. At the same hearing, the court arraigned Ms. Bergman for a second time and apparently then attempted to take Ms. Bergman's guilty plea. More specifically, the minute entry indicates that the district court "inquire[d] if the defendant admit[ted] essential elements of the crimes in counts 1 and 2 and determine[d] that she [wa]s unable to do so." *Id*. at 3. After a second recess, the court "further inquire[d] of the defendant . . . regarding excepting [sic] responsibility to the crimes she [wa]s pleading guilty to." *Id*. The court did not accept Ms. Bergman's guilty plea and set the case for trial.

As the majority accurately indicates, the district court found Ms. Bergman to be restored to competency solely based on the BOP's report. *See* Maj. Op. at 4. Although the minute entry reveals that the "Court h[ad] received a report indicating the defendant would be competent to proceed," R., Vol. I, Doc. 255, at 1, there is no indication either from the docket sheet itself or the documents available to us on appeal that the actual BOP report is or was ever part of the record in this case. Moreover, the government has not given us any guidance as to where that report may be found.

12

After the district court determined that Ms. Bergman had been restored to competency, Ms. Bergman was charged in a three-count superceding indictment on December 3, 2007, with: (1) using and causing another to use the mail and a facility in interstate commerce (cell phones and wire transfers) with the intent that a murder-for-hire be committed in violation of 18 U.S.C. § 1958; (2) conspiracy to commit murder-for-hire in violation of 18 U.S.C. § 1958; and (3) forfeiture of property constituting or derived from proceeds obtained from the charges ($29,000 and a $1000 postal order) pursuant to 18 U.S.C. §§ 981(a)(1)(C), 1956(c)(7), 1961(1) and 28 U.S.C. § 2461(c). She again attempted to plead guilty to those charges on December 21, 2007, at a hearing at which Mr. Kieffer appeared telephonically, but the district court rejected her plea because Ms. Bergman did not admit to having the requisite intent for the crimes charged.[8] The case proceeded to trial; it began on May 5, 2009. E.J. Hurst, II, a Maryland attorney, sat second chair at trial with Mr. Kieffer.[9] Ms. Bergman waived her right to a jury trial, so the case was tried to the district court. It lasted five days.[10]

---

[8] At the December 21, 2007 guilty plea hearing, Ms. Bergman repeatedly insisted that she had hired someone to protect her son from her ex-husband, but did not intend for her ex-husband to be killed. The district court concluded that it could not accept the plea because Ms. Bergman did not admit to murder-for-hire or conspiracy to commit murder-for-hire.

[9] Mr. Hurst did not enter a formal appearance until June 13, 2008.

[10] The district court entered an Amended Verdict on October 20, 2008. The original verdict referred only to the Indictment and not to the Superceding Indictment.

Before Ms. Bergman was sentenced, Mr. Kieffer's fraud was exposed. The district court issued an order stating:

> It has been suggested that Howard O. Keiffer [sic] who entered his appearance as Defendant's counsel is not a licensed attorney. He has now been suspended and removed from the rol[l] of attorneys authorized to practice before this Court by the Court's Disciplinary Panel. Given the fact that Mr. Keiffer [sic] represented the Defendant in a trial to this court without a jury which concluded with a guilty verdict, I am considering ordering a mistrial and vacating the verdict. Pursuant to Fed. R. Crim. P. 26.3, the parties shall file their comments regarding the propriety of such an order on or before July 18, 2008.

R., Vol. II, Doc. 364, at 1-2 (Dist. Ct. Order, filed July 8, 2008). The next day, Mr. Kieffer filed a Notice of Withdrawal of Counsel. Although the government requested a hearing on the issue, one was never held. At a status conference on September 15, 2008, the district court stated that "I am proceeding with the basic premise that [Mr. Kieffer] tried this case as a non-lawyer with Mr. Hurst's help." R., Vol. XX, Tr. at 4 (Status Conference, dated Sept. 15, 2008). Neither Mr. Hurst nor Ms. Eskesen, who was subsequently appointed as defense counsel when Mr. Hurst was permitted to withdraw from his representation of Ms. Bergman, requested a mistrial.[11]

---

[11] Ms. Bergman filed a pro se motion to vacate her convictions on the basis of ineffective assistance of counsel, but that motion was stricken by the court because she was represented by counsel, the same fate met by all of her pro se motions before both the district court and this court.

14

On December 4, 2008, the district court entered judgment against Ms. Bergman on her convictions as to Counts 1 and 2 of the Superceding Indictment and sentenced her to 108 months' imprisonment on each count, to be served concurrently, followed by 3 years of supervised release. The court dismissed Count 3, the forfeiture count, on the government's motion. In sentencing Ms. Bergman, the court denied her requests for a downward departure based on (1) her mental state and (2) Mr. Kieffer's performance.

Ms. Bergman timely appealed and we have jurisdiction over this appeal pursuant to 28 U.S.C. § 1291.

## II. Discussion

On appeal, Ms. Bergman contends that her Sixth Amendment right to counsel was violated: (1) when she was found competent to stand trial, and (2) when she stood trial while represented by someone fraudulently posing as an attorney. She also argues that the sentence imposed was unreasonable under the circumstances. I would find that Ms. Bergman's Sixth Amendment right to counsel was violated when the district court found her to be restored to competency while she was not represented by an attorney. To remedy the Sixth Amendment violation, rather than remand for the district court to determine if a retrospective competency determination is possible, I would vacate Ms. Bergman's convictions and remand the case for a new trial.

## A. Sixth Amendment Violation

The Sixth Amendment entitles a defendant to the assistance of counsel at every critical stage of a criminal prosecution, which includes a competency hearing. *Collins*, 430 F.3d at 1264; *cf.* 18 U.S.C. § 4247(d) (providing that if a defendant is financially unable to obtain representation at a competency hearing, counsel shall be appointed for her). "Critical stages are those steps of a criminal proceeding[] that hold significant consequences for the accused." *Collins*, 430 F.3d at 1264 (citing *Bell v. Cone*, 535 U.S. 685, 695-96 (2002)). "Thus a defendant is entitled to counsel at any proceeding where an attorney's assistance may avoid the substantial prejudice that could otherwise result from the proceeding." *Id.* (citing *Coleman v. Alabama*, 399 U.S. 1, 9 (1970)).

It must logically follow that, if a competency hearing is a critical stage, then the motion hearing held on October 23, 2007, was also a critical stage. Although the October 23, 2007 motion hearing was not a true competency hearing held pursuant to the statutory framework governing such hearings, it was at this hearing that the district court ultimately resolved the issue of Ms. Bergman's competency. That hearing therefore must be considered a critical stage because a competency determination carries significant potential consequences for a criminal defendant. "It is well-settled that the 'criminal trial of an incompetent defendant violates due process.'" *McGregor v. Gibson*, 248 F.3d 946, 951 (10th Cir. 2001) (en banc) (quoting *Medina v. California*, 505 U.S. 437, 453 (1992)). "This 'prohibition is fundamental to an adversary system of justice.'" *Id.*

16

(quoting *Drope v. Missouri*, 420 U.S. 162, 172 (1975)).  In making a competency determination, a court must consider "whether [the defendant] has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding—and whether he has a rational as well as factual understanding of the proceedings against him."  *Dusky v. United States*, 362 U.S. 402, 402 (1960) (per curiam) (internal quotation marks omitted); *see also McGregor*, 248 F.3d at 952.

At the October 23, 2007 hearing, the district court determined that Ms. Bergman had been restored to competency (making her eligible for trial)—a decision that held significant consequences for Ms. Bergman.  Accordingly, as the majority concluded, because the October 23, 2007 hearing was a critical stage of the criminal proceedings against Ms. Bergman, she was entitled to the assistance of counsel at that hearing.

Moreover, I agree with the majority's determination that Ms. Bergman's Sixth Amendment right to counsel was violated because she was represented at the hearing solely by "phoney counsel."  Maj. Op. at 7.  I reach this conclusion pursuant to *United States v. Cronic*, 466 U.S. 648 (1984), because Ms. Bergman was denied the assistance of counsel altogether, regardless of counsel's efficacy *vel non*.  *See Wright v. Van Patten*, 552 U.S. 120, 124-25, 124 n.* (2008) ("*Cronic*, not *Strickland*, applies . . . when counsel [is] either totally absent, or prevented from assisting the accused during a critical stage of the proceeding" or

17

when "counsel entirely fails to subject the prosecution's case to meaningful adversarial testing." (internal quotation marks omitted)); *Collins*, 430 F.3d at 1264-66 (finding a constructive denial of counsel under *Cronic* because counsel failed to subject prosecution's assertion of competency to adversarial testing, saying that he would "not comment").  Under *Cronic*, Ms. Bergman need not show that she suffered any prejudice as a result of not being represented by an attorney at the October 23, 2007 hearing, despite the government's repeated insistence that she must demonstrate prejudice.  Rather, "where there has been a 'complete absence of adversarial testing,' a Sixth Amendment violation is established under *Cronic* without the showing of prejudice that is otherwise required under *Strickland*."  *Collins*, 430 F.3d at 1265 (citing *Cronic*, 466 U.S. at 654; *Strickland v. Washington*, 466 U.S. 668, 692 (1984)); *see also Cronic*, 466 U.S. at 659 ("The presumption that counsel's assistance is essential requires us to conclude that a trial is unfair if the accused is denied counsel at a critical stage of his trial.").

Although the majority does not make this point explicit, I understand the majority to have followed *Cronic* and I write on this issue only for clarification.[12] The majority must have followed *Cronic* because it adopted a per se rule of

_____

[12]     I do, however, predicate my joinder in the majority's conclusions as to the Sixth Amendment violation on the understanding that the majority has reached those conclusions pursuant to *Cronic*.

ineffectiveness without requiring Ms. Bergman to prove prejudice. Maj. Op. at 9.

More specifically, the majority states that it

> adopt[s] a *narrow* per se rule of ineffectiveness where a defendant is, unbeknownst to him, represented by someone who has not been admitted to any bar based on his failure to ever meet the substantive requirements for the practice of law. Thus, Bergman was denied counsel at the October 2007 hearing, in violation of her Sixth Amendment right, regardless of her ability to prove prejudice.

*Id.* (citation omitted) (internal quotation marks omitted).[13] The majority could not

have adopted this type of rule under *Strickland*. *Cf. Strickland*, 466 U.S. at 691-

92 ("An error by counsel, even if professionally unreasonable, does not warrant

setting aside the judgment of a criminal proceeding if the error had no effect on

the judgment. . . . [A]ny deficiencies in counsel's performance must be

prejudicial to the defense in order to constitute ineffective assistance under the

Constitution." (citation omitted)).

Accordingly, pursuant to *Cronic*, the Sixth Amendment's guarantee to

representation by counsel cannot be satisfied by a non-attorney who has failed to

meet the substantive requirements for admission to practice law before any bar.

*See Novak*, 903 F.2d at 886-88; *Solina*, 709 F.2d at 161, 167-69. Mr. Kieffer

---

[13]        In adopting that rule, the majority relies upon the Second Circuit's holding in *Solina v. United States*, 709 F.2d 160, 167 (2d Cir. 1983), which preceded both *Cronic* and *Strickland*. However, as the Second Circuit later made clear, *Solina* and its progeny are consistent with *Cronic* rather than *Strickland* because "[w]hen the accused has been deprived of representation by counsel, he is entitled to relief without proving that he was prejudiced by the deprivation." *United States v. Novak*, 903 F.2d 883, 886 (2d Cir. 1990).

never attended law school, or even obtained a college degree, all of which would bar him from the legitimate practice of law. When Mr. Kieffer falsely purported to be an attorney, he deceived Ms. Bergman, the government, and the district court, and single-handedly caused Ms. Bergman to be deprived of her Sixth Amendment right to be represented by counsel.

## B. Remedy

Having concluded that Ms. Bergman's Sixth Amendment right to counsel was violated, we must determine the proper remedy to redress that constitutional injury. Ms. Bergman has argued that we should reverse her conviction, a remedy rejected by the majority. I disagree with the majority's decision to remand this matter to the district court for it to hold a hearing to determine whether it is possible to make a retrospective competency determination. That course of action is inappropriate in this case because: (1) the government has failed to request that remedy or to make any affirmative showing that we should not reverse Ms. Bergman's conviction and remand for a new trial as we did under analogous circumstances in *Collins*, 430 F.3d at 1267-68, and (2) there are no extraordinary circumstances present in this case that warrant our *sua sponte* application of a disfavored remedy, particularly in light of the paucity of evidence in the record on this issue.

It is well established that retrospective competency determinations are a disfavored remedy permitted "only in limited circumstances." *Collins*, 430 F.3d

20

at 1267 (citing *Drope*, 420 U.S. at 183; *McGregor*, 248 F.3d at 962-63); *see also Pate v. Robinson*, 383 U.S. 375, 387 (1966); *Dusky*, 362 U.S. at 402-03; *Clayton v. Gibson*, 199 F.3d 1162, 1169 (10th Cir. 1999). Its disfavored status arises from the inherent difficulties in conducting such a determination. A retrospective competency determination necessarily must focus on "a defendant's psychological state of mind at a specific [antecedent] point in time," *Collins*, 430 F.3d at 1267, which in Ms. Bergman's case would be her mental state as it existed three years ago. "A defendant may be competent to stand trial today, even though incompetent to assist in [her] defense six months ago." *Id.* The retrospective focus of that determination, and the passage of time, make such a determination difficult even "under the most favorable circumstances," *Drope*, 420 U.S. at 183, and is particularly inappropriate in this case, as I shall explain.

First, we should not choose to apply a disfavored remedy in this case because the government did not request that remedy and made no affirmative showing that a retrospective competency determination was warranted. The government did not indicate what remedy this court should apply were we to find, as we have, that Ms. Bergman's Sixth Amendment right to counsel was violated. Rather, the government chose to place all of its proverbial eggs in one basket, arguing only that Ms. Bergman's constitutional rights were not violated and that any error that did occur was not prejudicial to Ms. Bergman under *Strickland* because she wished to be found competent to stand trial. Now that we have

21

rejected that argument, the government has offered us no guidance whatsoever on how to remedy the Sixth Amendment violation.

As with other disfavored remedies, the government bears a heightened burden to demonstrate that a particular case falls within the "limited circumstances" under which a retrospective competency determination is warranted. *Collins*, 430 F.3d at 1267. In this respect, a retrospective competency determination may be analogized to another well-known category of disfavored remedies in this circuit—specifically, three types of injunctions that we have found to be "specifically disfavored."[14] *See O Centro Espirita Beneficiente Uniao Do Vegetal v. Ashcroft*, 389 F.3d 973, 975 (10th Cir. 2004) (en banc) (citing, affirming in part, and modifying in part *SCFC ILC, Inc. v. Visa USA, Inc.*, 936 F.2d 1096, 1098-99 (10th Cir. 1991)), *aff'd and remanded sub nom on other grounds*, *Gonzales v. O Centro Espirita Beneficiente Uniao Do Vegetal*, 546 U.S. 418 (2006); *see also Schrier v. Univ. of Colo.*, 427 F.3d 1253, 1259-62 (10th Cir. 2005). Because they are disfavored, "if a movant seeks a preliminary injunction that falls into one of th[ose] three categories . . . the movant must satisfy a heightened burden." *O Centro Espirita Beneficiente Uniao Do Vegetal*, 389 F.3d at 975. When a disfavored injunction is sought, a court must "more . . . closely

---

[14] The types of disfavored injunctions include: "(1) preliminary injunctions that alter the status quo; (2) mandatory preliminary injunctions; and (3) preliminary injunctions that afford the movant all the relief that it could recover at the conclusion of a full trial on the merits." *O Centro Espirita Beneficiente Uniao Do Vegetal*, 389 F.3d at 975. These injunctions are considered disfavored for various reasons.

22

scrutinize[] [the requested injunction] to assure that the exigencies of the case support the granting of a remedy that is extraordinary even in the normal course." *Id.*; *see also CBS, Inc. v. Davis*, 510 U.S. 1315, 1316-17 (1994) (staying a state court's preliminary injunction that amounted to a prior restraint on the media because prior restraints are "particularly disfavored" that are acceptable only in "exceptional cases" and because the party seeking the injunction had not met its burden in demonstrating that "the evil that would result from the reportage is both great and certain and cannot be mitigated by less intrusive measures" (internal quotation marks omitted)); *Martinez v. Mathews*, 544 F.2d 1233, 1243 (5th Cir. 1976) ("Mandatory preliminary relief, which goes well beyond simply maintaining the status quo pendente lite, is particularly disfavored, and should not be issued unless the facts and law clearly favor the moving party.").

This holds true for other types of remedies and legal devices that possess a disfavored status in the law—*viz.*, there is a higher burden on the potential beneficiary to show that its application is warranted. *Cf. Pressman-Gutman Co. v. First Union Nat'l Bank* (*In re Pressman-Gutman Co.*), 459 F.3d 383, 398-403 (3d Cir. 2006) (discussing high burden on petitioner seeking writ of mandamus, a disfavored "extraordinary remedy" and denying the writ because petitioner could not demonstrate that it possessed a right to mandamus that was "'clear and indisputable'"); *Tamko Roofing Prods., Inc. v. Smith Eng'g Co.*, 450 F.3d 822, 830-31 (8th Cir. 2006) (discussing prima facie tort claim, disfavored under

23

Missouri law, as a "particular and limited theory of recovery" and finding that plaintiff had not met its "heavy" burden in proving claim (internal quotation marks omitted)); *Van Ness Townhouses v. Mar Inds. Corp.*, 862 F.2d 754, 758 (9th Cir. 1988) ("[W]aiver of the right to arbitration is disfavored because it is a contractual right, and thus any party arguing waiver of arbitration bears a heavy burden of proof." (internal quotation marks omitted)). In this case, the government has not met its heightened burden to justify a disfavored remedy (i.e., a retrospective competency hearing). Indeed, the government made no attempt to do so; it never argued that this case qualifies as one of the "limited circumstances" in which a retrospective competency determination is warranted.

Moreover, even if we were to overlook the government's failure to meet its burden, and choose to apply this disfavored remedy *sua sponte*, there must be some extraordinary justification for our doing so. *Cf. Univ. of Pittsburgh v. Varian Med. Sys., Inc.*, 569 F.3d 1328, 1334-35 (Fed. Cir. 2009) (holding that "[b]ecause dismissal with prejudice is a harsh sanction that is disfavored under Third Circuit law and is not justified on this record, the dismissal should have been without prejudice" and stating that "dismissal [with prejudice] is a drastic sanction and should be reserved for those cases where there is a clear record of delay or contumacious conduct by the plaintiff" (internal quotation marks omitted)); *United States v. Michael*, 17 F.3d 1383, 1386 (11th Cir. 1994) ("Although federal courts possess the authority to dismiss an indictment for

24

governmental misconduct, dismissal is an extreme sanction which should be infrequently utilized. . . . Dismissal is only favored in the most egregious cases." (alteration in original) (internal quotation marks omitted)). There is no extraordinary justification apparent from the record in this case. Indeed, the facts of this case indicate quite the opposite.

As in *Collins*, due to the paucity of the record before us on this issue, we cannot answer the question of "whether the deprivation of [Ms. Bergman's] Sixth Amendment right to counsel resulted in the district court erroneously finding [her] competent to stand trial." 430 F.3d at 1267. The four factors enumerated in *Collins* and *McGregor* for assessing whether a retrospective competency determination can be made in a way that is meaningful and consistent with a defendant's due process rights all weigh against the application of that remedy in this case. "A 'meaningful' [retrospective competency] determination is possible where the state of the record, together with such additional evidence as may be relevant and available, permits an accurate assessment of the defendant's condition at the time of the original . . . proceedings." *Clayton*, 199 F.3d 1169 (internal quotation marks omitted). As we discussed in *Collins*,

> [f]our factors are considered in assessing whether a meaningful retrospective competency determination can be made consistent with a defendant's due process rights:
>
> > "(1) [T]he passage of time, (2) the availability of contemporaneous medical evidence, including medical records and prior competency determinations, (3) any statements by the defendant in the trial record, and (4)

25

> the availability of individuals and trial witnesses, both experts and non-experts, who were in a position to interact with defendant before and during trial."

430 F.3d at 1267 (second alteration in original) (quoting *McGregor*, 248 F.3d at 962-63).

In *Collins*, we found that the factors weighed against a retrospective competency determination: three years had passed since the competency evaluation and hearing; the defendant had indicated at his sentencing hearing that he believed his lawyers and the government were conspiring to prosecute him; and substitute defense counsel had questioned his client's competency before trial. *Id.* "[M]ost importantly, there [was] insufficient contemporaneous medical evidence to permit a retrospective competency determination" because there was no medical testimony presented at the competency hearing and the defendant did not have the opportunity to cross-examine the only evaluating psychologist as to his finding of competency. *Id.* We concluded that

> [t]his lack of contemporaneous medical evidence regarding Mr. Collins's competency at his competency hearing three years ago, coupled with [counsel's] serious and detailed questions regarding Mr. Collins's competency immediately before trial and the paucity of record evidence on the subject, lead us to conclude that a new hearing on the limited issue of competency will not ensure that Mr. Collins was indeed competent to stand trial in 2003.

*Id.* Consequently, we held that these facts did not constitute the appropriate "limited circumstances" that would justify a retrospective competency hearing. *Id.* Rather, "[b]ecause evidence could have been introduced and arguments made

26

that likely could have affected the outcome of Mr. Collins's competency hearings, it is impossible to say that the violation of his Sixth Amendment rights did not pervade his entire trial." *Id.* at 1268. Accordingly, the *Collins* court reversed the defendant's conviction and ordered a new trial, directing that "[i]f a question as to Mr. Collins's competency again arises, the district court should order a psychological evaluation of Mr. Collins's current mental state and conduct a new competency hearing, at which Mr. Collins is represented by counsel." *Id.*

In my view, the factors in *Collins* that weighed against conducting a retrospective competency determination are not only present in this case, they are heightened. The motion hearing of October 23, 2007 was in every way an inadequate proceeding by which to determine the state of Ms. Bergman's competency. Perhaps the best way to illustrate the hearing's inadequacy is to compare the competency hearing that took place on February 22, 2007 to the skeletal proceedings on October 23, 2007, for which we do not even have a transcript. At the February 22, 2007 hearing, the two examining doctors testified and were questioned by the government, defense counsel, and the court. Their testimony lasted for at least two hours. Ms. Bergman was also given an opportunity to testify and counsel presented arguments on the issue of competency. Moreover, the doctors' reports were both admitted into evidence as sealed documents and form part of the record before us on appeal. By contrast, on October 23, 2007, the BOP staff's opinion that Ms. Bergman had been restored

27

to competency did not, as far as we can tell, become part of the record. That opinion also was not subjected to any adversarial testing—no expert testified and Ms. Bergman had no opportunity to cross-examine any expert.

Furthermore, the statutory framework for a competency hearing was not followed. 18 U.S.C. § 4241(e) provides that the district court was required to hold a hearing to determine if Ms. Bergman had been restored to competency.[15] That hearing must conform to the provisions of § 4247(d), which requires that the defendant "shall be represented by counsel" and "shall be afforded an opportunity to testify, to present evidence, to subpoena witnesses on his behalf, and to confront and cross-examine witnesses who appear at the hearing." 18

_____

[15]     18 U.S.C. § 4241(e) reads as follows:

> When the director of the facility in which a defendant is hospitalized pursuant to subsection (d) determines that the defendant has recovered to such an extent that he is able to understand the nature and consequences of the proceedings against him and to assist properly in his defense, he shall promptly file a certificate to that effect with the clerk of the court that ordered the commitment. The clerk shall send a copy of the certificate to the defendant's counsel and to the attorney for the Government. The court shall hold a hearing, conducted pursuant to the provisions of section 4247(d), to determine the competency of the defendant. If, after the hearing, the court finds by a preponderance of the evidence that the defendant has recovered to such an extent that he is able to understand the nature and consequences of the proceedings against him and to assist properly in his defense, the court shall order his immediate discharge from the facility in which he is hospitalized and shall set the date for trial or other proceedings. Upon discharge, the defendant is subject to the provisions of chapters 207 and 227.

18 U.S.C. § 4241(e).

28

U.S.C. § 4247(d). If, after a hearing, the court finds by a preponderance of the evidence that the defendant has recovered to such an extent that she is able to understand the nature and consequences of the proceedings against her and to assist in her defense, the court is required to order her immediate discharge from the facility in which she was hospitalized and set the date for trial. *Id.* § 4241(e). The record here indicates that these procedures were not followed.

The sparse record leaves us with several crucial *and* unanswerable questions. For example, we do not know the precise contents of the BOP staff's report opining that Ms. Bergman had been restored to competency. Because we cannot locate the report in the record in this case, we do not know whether the report even still exists to be reexamined in the context of a retrospective competency hearing. Perhaps more importantly, because there was no adversarial testing or formal competency hearing on October 23, 2007, we also do not know (and, indeed, cannot know) if there would have been any contrary evidence that may have shown that Ms. Bergman in fact had not been restored to competency on October 23, 2007. *See Collins*, 430 F.3d at 1267. There simply is nothing in the record to cause me to believe that a retrospective competency determination would be meaningful or even possible in this case. In providing an adequate and effective remedy for a constitutional violation, we should not dwell in the realm of conjecture, especially when choosing a disfavored remedy *sua sponte*.

29

Accordingly, I concur in part as to the majority's conclusion regarding the violation of Ms. Bergman's Sixth Amendment right to counsel and respectfully dissent in part as to the majority's choice of a disfavored remedy to redress that constitutional violation. As was the case in *Collins*, "[b]ecause evidence could have been introduced and arguments made that likely could have affected the outcome of [Ms. Bergman's] competency hearings, it is impossible to say that the violation of [her] Sixth Amendment rights did not pervade [her] entire trial." *Id.* at 1268. I would remand this matter to the district court, directing it to vacate Ms. Bergman's convictions and to proceed with a new trial, provided that she is currently competent to participate in one. If there is some question as to Ms. Bergman's present competency, I would direct the district court to order a psychological evaluation of Ms. Bergman's current mental state and conduct a new competency hearing, at which she should be represented by counsel. For the foregoing reasons, therefore, I respectfully write separately.